580 P.2d 704

TOWN OF CHINO VALLEY, a Municipal Corporation formed on behalf of itself and its citizens, William J. Wells, Edwin F. Johnson and Everet Brisendine, for and on behalf of themselves and other persons or legal entities, constituting a class too numerous to be named as parties, Petitioners,

v.

The STATE LAND DEPARTMENT, a department of the State of Arizona, Andrew L. Bettwy, State Land Commissioner of the State of Arizona, and CITY OF PRESCOTT, a political subdivision of the State of Arizona, a real party in interest, Respondents.

No. 13602.

Supreme Court of Arizona, In Banc.

April 26, 1978.

Rehearing Denied June 6, 1978.

244

Udall, Shumway, Blackhurst, Allen, Bentley & Lyons by Dale R. Shumway, Mesa, William P. Mahoney, Phoenix, for petitioners.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Acting Atty. Gen., by Dale Pontius, Phoenix, for respondent State Land Dept.

Chester R. Lockwood, Jr., Acting City Atty., Prescott, Carmichael, McClue, Stephens, Mason & Toles by Martha B. Kaplan and Bill Stephens, Phoenix, for City of Prescott.

Chandler, Tullar, Udall & Redhair by Thomas Chandler and Robert E. Lundquist, Tucson, for amicus curiae Anamax.

Lewis & Roca by Tom Galbraith, Phoenix, for amicus curiae Cyprus Pima Mining Co.

Frederick S. Dean, City Atty. by T. J. Harrison, Asst. City Atty., Tucson, for amicus curiae City of Tucson.

Evans, Kitchel & Jenckes by Burton M. Apker, Phoenix, for amicus curiae ASARCO Inc.

Fennemore, Craig, von Ammon & Udall by Calvin H. Udall and James W. Johnson, Phoenix, for amicus curiae Duval Corp.

HOLOHAN, Justice.

The Town of Chino Valley, a municipal corporation, on behalf of itself and its citizens, together with William J. Wells, Edwin F. Johnson and Everet Brisendine on behalf of themselves and others constituting a class filed this petition for a special action against the State Land Department, Andrew Bettwy, the State Land Commissioner, and the City of Prescott to prevent enforcement of the 1977 Amendments to the Groundwater Code of 1948.

Because the issues raised in the petition affect not only the vital interest of petitioners but also those of many other citizens, municipalities and business interests, we accepted jurisdiction of the special action.

The 1977 Amendments to the Groundwater Code (Laws 1977, Chapter 29) occurred after this court's decision in *Farmers Investment Company v. Bettwy*, 113 Ariz. 520, 558 P.2d 14 (1976). The problem of competing economic and political interests was brought sharply into focus in the fore-

going case. Mining, farming, and municipal interests were engaged in a struggle to satisfy their needs from an ever-decreasing supply of groundwater. This court applied the long-established principles of groundwater to the case, declining to "prefer one economic interest over another on an ad hoc basis," where there was not enough groundwater to satisfy the competing interests. We stated that if one interest was to be preferred over the other, the Legislature was the appropriate body to designate which economic interest would prevail.

The Legislature accepted this court's suggestion that action be taken, but it quickly became evident that a comprehensive plan for the allocation and distribution of groundwater was a difficult task, charged with controversy. The compromise was an interim solution to deal with immediate and current groundwater uses, and a comprehensive plan to be presented to the Legislature by December 31, 1979 by a special commission. (Laws 1977 Chapter 29 Section 7.)

THE 1977 AMENDMENTS

The 1977 Amendments to the Groundwater Act, A.R.S. § 45–301, *et seq.*, were prefaced by a statement of legislative intent which provided:

> *Section 1. Legislative findings: declaration of policy*
>
> The Legislature of the State of Arizona finds that strict application of existing law preventing the transfer of groundwater jeopardizes the economy and well-being of the people of this state and prevents certain necessary distribution of Arizona's groundwater resources. The Legislature also finds that in view of the rapid depletion of groundwater in this state it is imperative that a comprehensive long-range plan providing for groundwater management in this state be adopted as soon as possible to assure the reasonable use of groundwater resources in this state and for an equitable and dependable allocation and distribution of such resources to provide maximum benefit for the citizens of Arizona.

> Therefore, the Legislature declares that the provisions of this act relating to the transfer of groundwater are immediately necessary for the best interests and welfare of the citizens of this state to maintain the economy of this state, to prevent the loss of jobs, and to provide a dependable water supply for Arizona cities and towns. The Legislature further declares that the provisions of this act are intended to apply only until a comprehensive plan providing for groundwater use, allocation, and distribution is implemented in this state.

Laws 1977 Chapter 29 Section 1.

The 1977 Amendments set up a system by which those persons, who prior to January 1, 1977 had been transferring groundwater from and within a critical groundwater area for a specific reasonable and beneficial purpose within or without the area, could continue such use and transfer if they secured a certificate of exemption from the State Land Department. A.R.S. §§ 45–317.01, 317.05.* Prior to the issuance of a certificate of exemption the State Land Commissioner was required to give notice of the application and hold a hearing. A.R.S. §§ 45–317.05, 317.06. Those dissatisfied with the decision of the Commissioner could appeal to the Superior Court. A.R.S. § 45–317.07. If the transfer of groundwater pursuant to a certificate of exemption injured another's groundwater supply, damages could be recovered but no injunction would be issued by the courts to stop the transfer of the water. A.R.S. §§ 45–317.01(A), (C); 45–317.04.

In December 1977 the respondent City of Prescott filed an application with the State Land Commissioner seeking a certificate of exemption pursuant to A.R.S. § 45–317.05 to continue to transfer water from a critical groundwater area to the area served by the city for domestic and municipal purposes. The petitioners filed this special action asking for relief in a number of areas, but principally that the State Land Commis-

* Statutory references are set forth in the Appendix.

sioner be enjoined from acting under the authority granted him by the 1977 Amendments. It must be noted that petitioners and the City of Prescott have been involved in litigation over the transfer of groundwater since 1972. *Town of Chino Valley v. City of Prescott,* No. 28568, Superior Court of Yavapai County.

## REPRESENTATIVE CAPACITY OF PETITIONERS

■ At the outset we must point out that the Town of Chino Valley may not challenge the constitutionality of the statute on behalf of its citizens. As a creation of the state, the municipality has not been empowered to invoke the personal rights of its citizens against the state. *Town of Wickenburg v. State,* 115 Ariz. 465, 565 P.2d 1326 (App.1977). *See also Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933).

■ The petition does not allege any specific interference with a property interest possessed by the Town of Chino Valley. Under the circumstances the town itself is without standing to challenge the constitutionality of the statutes in question; therefore the Town of Chino Valley is dismissed from this special action.

■ Concerning the allegations of the remaining petitioners that they represent themselves and others of a class, we limit petitioners to representation of their own interests and decline to recognize any class representation. We find nothing in the Rules of Procedure for Special Actions which authorizes class actions.

The petitioners challenge the constitutionality of the 1977 Amendments on a number of grounds, but the principal contentions involve the claim that the amendments violate the separation of powers provision of the state constitution and that the property rights of petitioners are being taken without just compensation.

Petitioners have also urged that the Legislature has unconstitutionally delegated its powers to a commission created under the 1977 Amendments. Laws 1977 Ch. 29 § 7. The provision in question states:

E. The commission shall:

\*  \*  \*  \*  \*  \*

7. By December 31, 1979, prepare a comprehensive final report of commission findings and recommendations for delivery to the governor, the president of the senate and the speaker of the house of representatives. The final report shall contain a draft of recommended constitutional or statutory amendments.

\*  \*  \*  \*  \*  \*

G. If the legislature shall fail to enact a groundwater management code by the first Monday in September, 1981 the code recommended by the commission shall become the law effective on that date without any further authorizing legislation and shall be administered and implemented by the agency designated in the proposed code, or if none is designated, by the department.

\*  \*  \*  \*  \*  \*

Laws 1977 Ch. 29 § 7.

■ The petitioners contend that this is a blatant violation of Articles III and IV of the state constitution. They point out that the legislative power is vested in the Legislature subject only to the right of the people under the Initiative and Referendum process. The Legislature may not delegate its powers to others. *Haggard v. Industrial Commission,* 71 Ariz. 91, 223 P.2d 915 (1950); *Southern Pacific Company v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963); *Loftus v. Russell,* 69 Ariz. 245, 212 P.2d 91 (1949); *Cochise County v. Dandoy,* 116 Ariz. 53, 567 P.2d 1182 (1977).

■ Although the argument presented by petitioners might have considerable merit if we were required to decide that issue, respondents remind us that the consideration of the issue is premature in that it is pure speculation whether the Legislature will fail to act. Respondents contend that we should refrain from passing on the point because the existence of the Commission does not injure petitioners, and thus there is no need to decide the issue in the abstract.

In *Moore v. Bolin,* 70 Ariz. 354, 220 P.2d 850 (1950) we stated the rule to be that there would be no consideration of the constitutionality of an act if no injury had as yet resulted from the application of the statute and no rights had been brought within its actual or threatened operation. We believe that consideration of the issue concerning the purported power given to the Commission is premature, and we therefore decline to consider the matter at this time.

## SEPARATION OF POWERS

Petitioners' first challenge to the constitutionality of the 1977 Amendments is based on Article 3 of the Arizona Constitution which provides for three separate branches of state government with no one of the departments permitted to exercise the powers properly belonging to either of the others. Petitioners point out that Article 6 § 16 of the Arizona Constitution specifically grants the Superior Court or any judge thereof the power to issue injunctions. It is contended that the 1977 Amendments by forbidding the issuance of injunctions to prevent groundwater transfers violate Article 3 of the state constitution in that it is an attempt by one department of government, the Legislature, to usurp the constitutional powers granted to another department, the Judiciary.

Restrictions on the use of injunctions are certainly not new to Arizona law. The provisions of A.R.S. § 12–1802 which prohibit the issuance of injunctions in a number of specified instances have been a part of this state's laws since 1913. *See* Paragraph 1459 Civil Code Revised Statutes of Arizona, 1913. This court, over the years, has upheld the validity of the statute on a number of occasions. *Hislop v. Rodgers,* 54 Ariz. 101, 92 P.2d 527 (1939); *Corbin v. Rodgers,* 53 Ariz. 35, 85 P.2d 59 (1938); *Council of City of Phoenix v. Winn,* 70 Ariz. 316, 220 P.2d 222 (1950); *City of Tucson v. Garrett,* 77 Ariz. 73, 267 P.2d 717 (1954); *City of Tucson v. Landry,* 108 Ariz. 106, 493 P.2d 117 (1972). The provision was originally taken from the California Civil Code Section 3423. *Corbin v. Rodgers, supra.*

Although the restriction on the issuance of an injunction appears to impose on the power and authority of the court, such provisions have been construed to apply to limit, as a matter of substantive law, the remedy available to an individual litigant. The distinction between the two concepts was explained in a California Court of Appeals decision as follows:

". . . To the argument that this jurisdiction could not be limited by statute this court said in *Spreckels v. Hawaiian etc. Co.,* 117 Cal. 377, 49 P. 353, and in *Wright v. Superior Court,* 139 Cal. 469, 73 P. 145, that subdivision 1 of section 3423 was an exercise of the legislative power to define the rights of persons. It did not limit the power of courts of equity to issue an injunction wherever the complaint was entitled thereto, but so operated on the complainant as to take away his right in certain cases to this form of relief." *Loftis v. Superior Court In and For Kings County,* 25 Cal.App.2d 346, 77 P.2d 491 (1938).

Limitations on the issuance of injunctions to restrain collection of taxes or to interfere in labor disputes are also common provisions in many state statutes. *See* A.R.S. § 42–204(B) and A.R.S. § 12–1808; *Santa Fe Trail T. Co. v. Bowles,* 62 Ariz. 177, 156 P.2d 722 (1945); *State Tax Commission v. Superior Court,* 104 Ariz. 166, 450 P.2d 103 (1969); *Eddy v. Township of Lee,* 73 Mich. 123, 40 N.W. 792 (1888)); *Lougee v. New Mexico Bureau of Revenue Com'r,* 42 N.M. 115, 76 P.2d 6 (1938); *Denver Local Union No. 13 Etc. v. Perry Truck Lines,* 106 Colo. 25, 101 P.2d 436 (1940).

The various statutes placing limitations on the issuance of injunctions are not limitations on the power of the courts. The statutes are generally viewed as providing a substantive limitation on the remedy or mode of relief sought by a litigant. Parties have no vested right in a particular remedy or mode of procedure and the Legislature may change existing remedies or prescribe new modes of relief provided an efficacious remedy remains. *Steinfeld v.*

*Nielsen,* 15 Ariz. 424, 466, 139 P. 879, 896 (1914); *Brotherhood of American Yeomen v. Manz,* 23 Ariz. 610, 616, 206 P. 403, 405 (1922); *Ray v. Rambaud,* 103 Ariz. 186, 188, 438 P.2d 752, 754 (1968); *see also Gibbes v. Zimmerman, et al.,* 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342 (1933); *Denver & R. G. W. R. Co. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967).

■ The Legislature in limiting relief for injury caused by groundwater transfers to that of damages did not invade the powers of the Judiciary. The limitation of the remedy under the 1977 Amendments was within the power of the Legislature to create or change remedies for civil wrongs.

## EFFECTIVE REMEDY

Petitioners' final point is that the limitation of the remedy to that of damages is not an effective remedy. It is argued that under such circumstances, the restriction on the use of injunctions under the 1977 Amendments is not constitutional or that at least it should not be enforced in all cases.

■ At the outset it must be conceded that the interests which petitioners seek to protect are property rights. We recognized in *Farmers Investment Company v. Bettwy, supra,* that the doctrine of reasonable use as judicially determined in Arizona had become a rule of property and was entitled to protection as such. Under the doctrine of reasonable use property owners have the right to capture and use the underground water beneath their land for a beneficial purpose on that land, but no landowner can transport water off the land from which it came if the transfer injured the water supply of neighboring property owners.

Petitioners contend that damages are inadequate to protect their property right in the water supply beneath their lands. They argue that, if an effective remedy is not provided by statute for the taking of their property right, the statute permitting the taking should be declared unconstitutional. Alternatively, petitioners contend that if an effective remedy is not provided the courts should use the powers granted them by the Arizona Constitution and issue injunctions to prevent the injury being caused by the groundwater transfers.

■ Generally legislation will not be declared unconstitutional unless a person has been deprived of all existing remedies for enforcement of a right. *Drachman v. Jay,* 4 Ariz.App. 70, 417 P.2d 704 (1966); *Brinkheroff-Faris Trust & Savings Company v. Hill,* 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930). The 1977 Amendments limit the remedy of landowners to that of money damages. A.R.S. § 45–317.04. The amendments provide that the court or jury shall award damages as are just and reasonable for all past, present and future injury. A.R.S. § 45–317.04(C). In addition those injured by a groundwater transfer may recover reasonable attorney's fees, expert witness expenses and fees and court costs.

■ Finally it must be noted that a certificate of exemption is authority to transfer a limited amount of water for the same purposes for which the transfer was made prior to January 1, 1977. A.R.S. § 45–317.01(B). In general the amount of water capable of being transferred is governed by the history of previous use.

With the limitations on the amount of water transferred set forth in the 1977 Amendments and mindful that the statutory scheme is a temporary one we cannot say that the remedy of damages is inadequate. Particularly we cannot make such a finding in the case of petitioners because the facts are in dispute as to the nature of their injury. From the pleadings it appears that groundwater transfers by the City of Prescott have occurred from 1962 to the present. The nature and extent of petitioners' injury is a matter involved in litigation previously noted in this opinion. We reserve the right under our constitutional authority to act if in fact in a particular case no other adequate remedy but injunction is available. *See Valley Nat. Bank of Phoenix v. Apache County,* 57 Ariz. 459, 114 P.2d 883 (1941); *McCluskey v. Sparks,* 80 Ariz. 15, 291 P.2d 791 (1955); *Southern Pacific Company v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963).

From the foregoing we do not find those sections of the 1977 Amendments considered in this case to be unconstitutional; therefore the relief sought by petitioners is denied.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS, J., concur.

*NOTE*: Justice FRANK X. GORDON, Jr. did not participate in the determination of this matter.

## APPENDIX

*Excerpts from 1977 Amendments to the Groundwater Code of 1948:*

§ 45–317.01. Existing groundwater transfers from critical groundwater areas

A. A person who, prior to January 1, 1977, was transferring groundwater from land within a critical groundwater area for reasonable and beneficial use within or from such critical groundwater area designated prior to January 1, 1977, and such person's successors in interest, shall not be enjoined from making such transfer if the transfer is in accordance with a certificate of exemption, as provided in this article. A person injured by such transfer shall be entitled to recover damages pursuant to § 45–317.04.

B. A transfer pursuant to subsection A of this section shall be limited to the same purposes for which the transfer was made prior to issuance of the certificate of exemption and to an annual amount equal to the highest consecutive twelve-month amount which was transferred by such person within the eight years preceding January 1, 1977 and, if an industrial user, to the amount which would have been transferred for the same purposes from pumping and delivery facilities actually in place and capable of production during such twelve-month period but for the temporary availability of alternate supplies actually used: except that the amount specified in the certificate of exemption shall not be less than the amount of the annual use of the retired irrigated land owned or leased by the applicant prior to January 1, 1977 which

is or has been retired by June 1, 1977. Notwithstanding § 45–301, as to irrigated land owned or leased prior to January 1, 1977 which is or has been retired by June 1, 1977, by a person transferring groundwater pursuant to subsection A of this section, "annual use" for the purposes of this article means the annual amount equal to the average of the amounts of groundwater withdrawn for the irrigation of such land in the five highest consecutive years, treating only those years in which the land was actually irrigated as consecutive, in the period beginning eight years prior to purchase and ending January 1, 1977. A city or town which, prior to January 1, 1977, was transferring groundwater from a critical groundwater area pursuant to a court order may transfer an amount of groundwater from such critical groundwater area not to exceed the annual use of the irrigated land owned or leased by the city or town prior to January 1, 1977.

C. A person who is transferring groundwater from land within a critical groundwater area designated prior to January 1, 1977 for the irrigation of land within such critical groundwater area and from wells permitted or registered under § 45–304, 45–313 or 45–316, and his successors in interest, shall not be enjoined from transferring the amount of groundwater necessary for irrigation of the crops historically grown on such lands prior to January 1, 1977, and no certificate of exemption shall be required. A person injured by such transfer shall be entitled to recover damages pursuant to § 45–317.04. A person adjudicated to be making transfers to the injury of others and for which damages are awarded shall thereafter file the annual report required pursuant to § 45–317.08 and shall be subject to termination of the right to transfer pursuant to § 45–317.09 as if such transfer were included in a certificate of exemption.

§ 45–317.05. Certificate of exemption; application; notice

A. Certificates of exemption shall be issued for the purpose of describing specific uses and amounts of groundwater which

shall not be enjoined if found to constitute transfers of groundwater. Neither the application for nor the issuance of the certificate shall constitute an admission or finding that any groundwater withdrawn and used by the applicant is or is not a transfer or is or is not in violation of law or in violation of another's rights. Neither application for nor issuance of a certificate of exemption shall prohibit additional lawful development and use of groundwater by such person.

B. Except as provided in subsection C of § 45–317.01 and in § 45–317.03, a person who, prior to January 1, 1977, was transferring groundwater from a designated critical groundwater area shall by December 31, 1977, apply to the department for a certificate of exemption. If a claim is made that a transfer of groundwater is not pursuant to a certificate required by this section, and for good cause shown excusing the failure to timely file, the department may accept an application after the filing deadline.

C. No person shall commence a groundwater transfer pursuant to § 45–317.02 without obtaining a certificate of exemption. Upon request of the applicant and after giving ten days' notice to the persons described in subsection E of this section, the department may issue a provisional certificate for the transfer of groundwater for such period of time and for such amount of water and upon such terms as determined by the department pending issuance of a certificate.

D. The application shall include the following:

1. The name and mailing address of the applicant.

2. The quantity of groundwater use for which application for certification is made.

3. The name and address of the owner of the land on which each well is located from which groundwater is to be withdrawn and for which application is made.

4. The location of each well from which groundwater is to be withdrawn.

5. To the extent information is reasonably available to the applicant:

(a) The depth and diameter and general specification of each well.

(b) The length and position in feet below the land surface of any casing used.

(c) The location and specifications of each perforated zone in the casing.

(d) The depth in feet from the land surface to the static groundwater level.

(e) The depth in feet from the land surface to the position of the pumping level and the depth of the setting of the pump bowls.

6. The name of the critical groundwater area from which groundwater is to be withdrawn.

7. Legal description within ten acres of the land on which groundwater is to be used.

8. The specific purpose and amount of groundwater to be used and:

(a) If for uses pursuant to § 45–317.01, the highest amount of groundwater used in any consecutive twelve-month period in the eight years preceding January 1, 1977. If for industrial purposes, the industrial output, including the amount of ore milled if for mining purposes.

(b) The legal description and a map of all irrigated land owned or leased by the applicant in the critical groundwater area or areas in or from which a transfer is to be made, the annual use for the applicable period and identification of the lands withheld or proposed to be withheld from irrigation.

9. To the extent information is reasonably available to the applicant, the annual amount of groundwater withdrawn from each well described in paragraph 4 of this subsection for each of the five calendar years immediately preceding the application and tabulations of the monthly energy consumption for each such well for the same period of time.

10. The sworn statement that the information contained in the application is true and correct.

11. Such other information as the department may require.

E.   Upon receipt and filing of this application, the department shall, within thirty days of the filing, give written notice by first-class mail of such filing to all owners on record of wells on record with the department in the critical groundwater area within ten miles of any well for which application is made.   In addition, written notice shall be given to the clerk of the board of supervisors of the county or counties, the mayor of each city or town, each certificated water company and to the presiding officer of each irrigation, electrical and agricultural improvement district and water users' association located wholly or partly within the critical groundwater area. Notice shall also be published once each week for two consecutive weeks in a newspaper of general circulation in the county or counties in which the critical groundwater area is located.

F.   The application shall be deemed filed upon its receipt together with the required filing fee by the department at its office in Phoenix.

§ 45-317.06.   Certificates; issuance; hearing;  contents

A.   The department shall issue a certificate to the applicant unless the department determines that the information contained in the application is incorrect or is insufficient to issue a certificate or unless written objections are received within sixty days of the date of the notice provided for in § 45-317.05, subsection E.   If the department determines that the information contained in the application is incorrect or is insufficient to issue a certificate, the department shall return the application specifically stating the reasons for returning the application.   The applicant may reapply within thirty days of receipt of return or may appeal the determination by special action pursuant to § 45-317.07.   A reapplication shall relate back to the date of the filing of the original application but shall otherwise be treated as a new application.

B.   If written objections to the notification are received, the department shall hold a hearing on such application.   Objections may be made on the basis that the information in the application is incorrect or insufficient to issue a certificate and to the total quantity of groundwater claimed pursuant to § 45-317.01 and to the quantity of annual use on irrigated land.   The department shall, thirty days prior to the date of the hearing, give written notice in the manner and to the persons described in § 45-317.05, subsection E.

C.   The hearings shall be held at the office of the department in Phoenix not less than sixty days nor more than ninety days after the expiration of the time in which to file objections.   The department shall enter its findings and order within thirty days of the hearing.

D.   In determining the annual use of groundwater for irrigated land, the department shall ascertain the quantity of water actually pumped from all wells and applied to such land for the applicable five-year period.   The withdrawals from all wells shall be established as accurately as possible from any records of measurement, power consumption, energy or fuel cost, crop data or other information from which the amount of actual withdrawal can be estimated, including any sworn statements of persons acquainted with irrigation on the land as to the amounts or estimations of amounts of pumping from the wells.   The total annual quantity pumped from all wells and applied to the land for each of the five applicable years shall be added and divided by five to state the annual use of groundwater attributable to such land.

E.   The certificate of exemption issued by the department shall contain the following:

1.   The name and mailing address of the person to whom the certificate is issued.

2.   The specific purposes for which the groundwater will be used.

3.   The locations of the sources of supply and the places of use.

4.   The total annual amount of groundwater for which the certificate is issued and shall separately state:

(a) The annual use of groundwater on retired irrigated land owned or leased by the applicant within the critical groundwater area.

(b) The annual use of groundwater on irrigated land owned or leased by the applicant within the critical groundwater area and not retired.

(c) Other quantities of groundwater to be used and the source of such groundwater.

F. The certificate of exemption shall be filed with the department and recorded by the applicant in the county or counties in which the source of supply and place of use are located.

G. Except as provided in § 45–317.10, to the extent the quantity of groundwater provided for in a certificate of exemption is not used for the purpose stated in the certificate in a given year, such groundwater may not be used for any other purpose. Non-use for any length of time for any reason shall not cause the quantity provided for in the certificate to be diminished.

H. Nothing in this article shall prohibit replacing, deepening or changing the location of any wells supplying water included in a certificate of exemption if the total quantity of groundwater included in the certificate which is used and transferred is not increased. A person replacing, deepening or changing the location of such a well shall provide the department with such information as the department may require concerning such change. The department may adopt rules and regulations for changing the location of any wells in critical groundwater areas to prevent unreasonably increasing damage to surrounding land from the concentration of wells by any person in any portion of a critical groundwater area and requiring that the new location bear a reasonable relationship to the retired irrigated land where applicable. If the location of a well is changed from that described in the certificate, the department shall amend the certificate accordingly. The provisions of § 45–317.04 shall apply to transfers of groundwater from wells relocated, deepened or replaced under this article, except that if the well is relocated off the retired irrigated land where it was originally situated and the new location does not bear a reasonable relationship to the retired irrigated land if applicable, then with respect to all transfers made under § 45–317.02, other than those made primarily for domestic purposes, the provisions of subsection D of § 45–317.04 shall not apply.

§ 45–317.07. Exemption certificates; appeal

A. An applicant or person whose rights are affected by the granting or denial of a certificate of exemption may within thirty days of the final decision of the department, appeal by special action to the superior court in Maricopa county, which court may change or modify the decision of the department.

B. A copy of the petition shall be served upon the department and upon all persons who appeared and participated in the hearing before the department within ten days after it is filed. The department shall answer the petition within twenty days from service and, with the answer, transmit to the court the records and files in the matter on appeal. The appeal shall be determined de novo upon the records and files of the department and upon further evidence adduced by the parties.

C. The filing of such appeal shall not stay transfers pursuant to § 45–317.01 but shall stay transfers applied for pursuant to § 45–317.02, unless the court, for cause shown, finds that such stay would cause irreparable harm, in which event the court may allow such transfer pending appeal on conditions specified by the court.

§ 45–317.04. Recovery of damages for injury caused by transfers of groundwater from a critical groundwater area

A. Except as provided in § 45–317.03 and subsection D of this section, nothing in this article shall limit the right of any person to recover damages for any transfer of groundwater within or from a designated critical groundwater area which causes impairment of or damage to his groundwater supply.

B. Except as provided in § 45–317.03, injury shall be conclusively presumed to have resulted from the transfer and use of groundwater out of the critical groundwater area.

C. If injury is found from the transfer of groundwater within or from a designated critical groundwater area, the court or jury shall consider all relevant circumstances and award damages as are just and reasonable for all past, present and future injury. In addition, the court may if damages are nominal and otherwise shall if damages are substantial award reasonable attorney's fees, expert witness expenses and fees and court costs. An offeree of judgment shall not be awarded such fees and expenses incurred after an offer of judgment has been made in accordance with the rules of civil procedure if the final judgment is not more favorable to the offeree than the offer of judgment.

D. Damages shall not be recoverable for transfer of that portion of the annual use of retired irrigated land which would not actually have returned to the water table from the continued use of such water on irrigated land nor shall damages be recoverable for transfers otherwise found to be lawful.