831 P.2d 1279

**L. Kent SMITH, M.D. and Jane Doe
Smith, husband and wife, et.
al., Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Robert D. Myers, a judge thereof, Respondent Judge,**

**Martha B.T. BELLINA, individually and as surviving spouse of Philip Vincent Bellina, Jr., M.D., decedent, et al., Real Parties in Interest.**

**No. 1 CA–SA 91–210.**

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 31, 1991.

Review Granted July 7, 1992.

Broening Oberg & Woods by James R. Broening, Cynthia V. Cheney, Neal B. Thomas and Daniel A. Zanon, Phoenix, for petitioners.

Haralson, Kinerk & Morey, P.C. by Burton J. Kinerk and Kenneth Lee, Tucson, for real parties in interest.

Lewis and Roca by John P. Frank, Roger W. Kaufman and Alexandra M. Shafer, and Jones, Skelton & Hochuli by William R. Jones, Phoenix, for amici Mut. Ins. Co. of Arizona and the Arizona Hosp. Ass'n.

Snell & Wilmer by Barry D. Halpern and Thea Foglietta Silverstein, Phoenix, for amicus Arizona Medical Ass'n.

Goldman & Kaplan by Alan Goldman and David White, Phoenix, for amicus Evelyn Touchette.

## OPINION

KLEINSCHMIDT, Judge.

In this case we hold that the statute which allows for the periodic payment of any judgment for loss of future economic benefits in medical malpractice cases is constitutional. The case arises out of the death of the plaintiffs' decedent as the result of alleged malpractice by one of the defendants. The trial court ruled that the statute allowing for periodic payments for loss of future economic benefits, as opposed to a lump sum payment, was unconstitutional. The defendants filed this special action, and we accepted jurisdiction. We now grant the relief requested.

The periodic payment statute, Ariz.Rev. Stat.Ann. ("A.R.S.") §§ 12–581 through 12–591, was enacted in 1989. Before then, damages for future economic loss were awarded in a lump sum. The trial court concluded that a lump sum award is more valuable than the same amount paid in installments over a period of time. The court ruled that the statute was a limitation on damages and the right to pursue a cause of action in violation of art. II, § 31 and art. XVIII, § 6 of the Arizona Constitution. It also ruled that the statute was a forbidden special law within the meaning of art. IV, part 2, § 19 of the Arizona Constitution. Finally, the court also held that the statute violates the equal protection clauses of the United States Constitution and of the Arizona Constitution.

## THE STATUTORY SCHEME

We will paraphrase the pertinent parts of the statute in the context of an action for wrongful death. The full text of the statute is found in the appendix which follows this opinion. A discussion of the purpose

of the statute and how it is intended to operate may be found in Roger C. Henderson, *Designing a Responsible Periodic Payment System for Tort Awards; Arizona Enacts a Prototype,* 32 Ariz. L.Rev. 21 (1990).

The periodic payment statute applies only to medical malpractice suits. A.R.S. § 12–582. Only future medical expenses and lost earnings are subject to payment in monthly installments. All damages already accrued, and future non-economic damages like pain and suffering, are to be paid in a lump sum. A.R.S. § 12–584.

Either party to an action may invoke the provisions of the periodic payment statute. A party opposing periodic payments must show by clear and convincing evidence that good cause exists to allow a lump sum award for loss of future earnings. A.R.S. § 12–583. In considering whether good cause exists, the court may take into account the likelihood that those to whom a lump sum might be paid may dissipate the award, whether the amount of future damages and the period of time over which they will be paid is too insignificant to warrant the application of the statute, whether the party responsible for payment of future damages is able to fund the judgment, and any other consideration the court deems relevant. *Id.*

The statute requires the trier of fact to determine future economic damages by considering how long the deceased would have lived but for the defendant's wrongful act, changes in the deceased's earning potential, and changes in the purchasing power of the dollar. Because the damages are to be paid in installments, the total is not discounted to present value. A.R.S. § 12–585.

The plaintiffs are to receive installment payments over the period the deceased would have lived had his death not resulted from the defendant's wrongful act. A.R.S. § 12–584. If one or more but fewer than all of the plaintiffs die, the payments are reallocated to the surviving plaintiffs. The payments cease entirely once all of the plaintiffs die, even if this occurs before the expiration of the period the deceased would have been expected to live but for the defendant's wrongful act. A.R.S. § 12–590(B).

## THE STATUTE DOES NOT UNCONSTITUTIONALLY LIMIT RECOVERY OF DAMAGES

■ The plaintiffs argue that the statute offends two interrelated provisions of the Arizona Constitution. Arizona Constitution, art. II, § 31 provides:

No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person.

Arizona Constitution, art. XVIII, § 6 provides:

The right to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

Since the recovery for wrongful death is purely a creature of statute, the parties have addressed the question whether the constitutional provisions against the limitation of awards applies to the periodic payment statute. The argument is that the legislature is free to abolish or limit that which it alone has created. Given our resolution of the case, we need not decide this issue. We will assume that the constitutional provisions apply. We turn to the question whether the periodic payment statute creates a forbidden limitation on the recovery of damages.

We begin with the general observation that the statute does not limit the ability of the fact finder to award all damages claimed and proven. It changes when and how such damages may be paid. As a rule, there is no vested right in a particular remedy or mode of procedure. *See Town of Chino Valley v. State Land Dept.,* 119 Ariz. 243, 580 P.2d 704 (1978).

The plaintiffs, consistent with the trial judge's observation, argue that the statute is a limitation on damages because an amount to be paid periodically is less valuable than the same amount paid as a lump sum award. Of course, that would be true if one were to take into account the time

value of money. But that is not the plaintiffs' argument. They concede that the requirement that any lump sum award they might receive be reduced to present value vitiates such an argument. *See* A.R.S. §§ 12–587 and 12–589; *Martin v. United States*, 471 F.Supp. 6 (D.Ariz.1979); and *Restatement of Torts* § 913A (all relating to the reduction of lump sum awards to present value).

The plaintiffs do advance four arguments for why the statute is an impermissible limitation on damages. First, they say that periodic payment is less valuable than a lump sum because it is possible that a plaintiff who has a share in the wrongful death judgment may die prior to the time the jury predicted the death of the plaintiff's decedent. If that happens, since payments to a plaintiff terminate upon that plaintiff's death, the plaintiff will have received less money than would have been received had the judgment been paid in a lump sum. The basis for the plaintiff's argument is factually correct, but it is out of line with the theory that underlies the right to recover damages for loss. The object of an award of damages is to make whole a person who has suffered loss. One who has sustained a loss is not entitled to more than just compensation for the injury sustained. *See* 25 C.J.S. Damages § 3 and *Downs v. Sulphur Springs Valley Electric Coop.*, 80 Ariz. 286, 292–293, 297 P.2d 339, 343 (1956) (Article II, § 31 does not protect the right to recover punitive damages because "damages" are compensation for actual injury).

Basically, the plaintiffs' argument is that they have a right to receive a potential windfall—damages that they would not have received if the fact finder had known that their decedent would have outlived them but for the defendant's wrongful act. It is true that before the statute was enacted, awards to plaintiffs contained this potential for a windfall, but we do not believe that the constitutional provisions were intended to ensure that this potential for a windfall would be inviolate. The Supreme Court of California considered a very similar point in *American Bank & Trust Co. v. Community Hosp. of Los Gatos–Sara-*

*toga, Inc.*, 36 Cal.3d 359, 204 Cal.Rptr. 671, 683 P.2d 670 (1984). The California court was not, of course, construing constitutional provisions forbidding the limitation of damages. It was, however, discussing the argument that California's periodic payment statute deprived the plaintiff of due process of law by diminishing the value of his claim without providing a "quid pro quo." *Id.* 683 P.2d at 675, 204 Cal.Rptr. at 674. It said:

> In addition, the Legislature could legitimately determine that the public interest would be served by limiting a defendant's obligation to those future damages that a plaintiff actually incurs, eliminating the so-called 'windfall' obtained by a plaintiff's heirs when they inherit a portion of a lump-sum judgment that was intended to compensate the injured person for losses he in fact never sustained.

*American Bank, Id.* at 676, 204 Cal.Rptr. at 677.

The plaintiffs raise a second and interrelated argument. They say that a plaintiff who dies before the full amount of the expected loss awarded to him is paid has not lost a windfall, but has lost the right to bequeath to his heirs what he would have been awarded in a lump sum. Once again, the plaintiffs are correct as to the effect of the statute, but we do not believe that the constitutional safeguards against restricting awards were intended to reach so far as to guarantee the plaintiffs the right to bequeath money. A similar issue was presented in *Bernier v. Burris*, 113 Ill.2d 219, 100 Ill.Dec. 585, 497 N.E.2d 763 (1986), although the Illinois court did not construe provisions like those found in the Arizona Constitution. The Supreme Court of Illinois upheld the constitutionality of a periodic payment statute against the suggestion that it deprived the plaintiff of due process of law. The Illinois statute, like the Arizona statute, provided that in a wrongful death action the surviving beneficiaries would succeed to the share of the award of any other beneficiary who predeceased them. *Id.* 497 N.E.2d at 773, 100 Ill.Dec. at 595. The plaintiff challenged this provision as an impermissible interfer-

ence with the right to dispose of property. *Id.* at 774, 100 Ill.Dec. at 596. The Illinois court rejected this argument, saying:

> Limiting payments of future damages to the beneficiaries of the wrongful death in effect preserves the appropriate group of persons to whom those payments properly belong, and we find no constitutional infirmity in that method of distribution.

*Id.* This is in accord with the principle that the right to transmit property upon death is not a fundamental or constitutional right. *See Dillard v. New Mexico State Tax Comm'n.*, 53 N.M. 12, 201 P.2d 345 (1948), which held that while a statute may establish the right to devise property, nothing prevents the legislature from repealing or modifying any or "all laws relating to wills, descents and distributions." *Id.* 201 P.2d at 351. When a will clashes with a statute restricting the power to make a will, the statute prevails. *Estate of Nicely,* 235 Cal.App.2d 174, 44 Cal.Rptr. 804 (1965).

The plaintiffs' third argument is that the statute is an impermissible limitation on recovery because it creates the potential that they will never receive their award if the defendant, or whoever furnishes an annuity provided to satisfy the award, becomes insolvent. Insolvency of the judgment debtor is a concern for any judgment creditor. Inherent in most judgments is the possibility that the judgment debtor will be unable to pay. It is impossible to predict with respect to any given case just what effect the periodic payment statute will have on the ability of a judgment debtor to pay. In some cases, the inability to collect the full award immediately may result in the judgment creditor never receiving all that is due. In some cases, as where the judgment debtor is unable to pay the judgment all at once, an award structured for periodic payments may actually make it more likely that a judgment creditor will recover the full amount of the award. In many cases, the fact that such judgments may be commercially funded will make it more likely that the judgment creditor will recover the full amount of the award. The statute attempts to guard against a future insolvency by mandating that any entity responsible for funding the judgment must meet minimum standards. *See* A.R.S. § 12–593. The collectability of judgments is an imponderable against which art. II, § 31 and art. XVIII, § 6 were not intended to guard. *See Ruth v. Industrial Comm'n.*, 107 Ariz. 572, 576, 490 P.2d 828, 832 (1971). (Worker's compensation lien on judgment not an unconstitutional limitation on recovery because the constitutional provision was intended to maximize the injured worker's potential recovery, not to insure recoverability).

The plaintiffs' final argument is that the prediction of future medical expenses is an uncertain process, and that if unforeseen needs arise, the statute is inflexible in making funds available. Under A.R.S. § 12–587(G), the court retains jurisdiction to oversee judgments to be paid periodically, and A.R.S. § 12–589 contemplates that the court can order damages to be paid in advance of the period to which they apply. In any event, the problems of the unpredictability of future medical payments will not arise in a wrongful death case, so we need not belabor the point.

A somewhat related argument is raised in the amicus curiae brief filed by Evelyn Touchette. The amicus asserts that A.R.S. § 12–584, which requires the jury to make a finding as to how much future economic loss will occur in each year, will make it more likely that jury awards for future economic loss will be smaller than they would be if a lump sum award were allowed. She says that the statute implies that the plaintiff must have evidence sufficient to prove when future loss (apparently referring to medical expenses) will occur and the extent of the loss at that time. She points to the decision of the supreme court in *Saide v. Stanton,* 135 Ariz. 76, 659 P.2d 35 (1983), as an example of how little detailed evidence is necessary to support a lump sum award for future medical expense and as an example of how a lump sum award allows for flexibility in meeting unpredictable needs.

We are not convinced by these arguments. It is speculation to say that juries will award less damages if they are required to predict future needs on a year-by-

year basis. Nor is there anything about the periodic payment statute which changes the burden of proof. Evidence that was sufficient to take the case to the jury in *Saide* will still be sufficient to take a case to the jury under the periodic payment statute. Again, because this is a wrongful death case, the issue is not squarely presented.

## THE STATUTE DOES NOT DENY THE PLAINTIFFS THE EQUAL PROTECTION OF THE LAWS

█ The plaintiffs also contend that the statute denies them the equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution and art. II § 13 of the Arizona Constitution. They claim that the state has no compelling interest that would permit it to abridge their fundamental rights and that, in any event, no basis exists to favor medical malpractice defendants over all others with a statute that ameliorates the effect of a judgment.

The nature of the right or the character of the class affected controls which test is used to determine whether a statute denies a person the equal protection of the laws. The most stringent test of constitutionality, the strict scrutiny test, is used when a statute or regulation imposes a burden on a "suspect" class, like a particular race or religion, or interferes with a fundamental right. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). If a fundamental right is affected, the state must have a compelling interest in regulating it, and the statute or regulation must be necessary to achieve the legislative objective. *See id.; Arizona Downs v. Arizona Horseman's Foundation,* 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981). The proponent of the statute has the initial burden of demonstrating that the purpose of the statute is compelling. *See Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

The right to bring a claim for medical malpractice is a fundamental right protected by art. XVIII, § 6 of the Arizona Constitution. *See Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984). The plaintiffs assert that the right to have any judgment they receive for loss of future economic benefit paid in a lump sum is part and parcel of that fundamental right. If they are correct, the periodic payment statute fails the strict scrutiny test because the defendants have not carried their burden of demonstrating a compelling state need for its enactment.

We do not believe that the periodic payment statute precludes the plaintiffs from maintaining an action to recover for injuries. The statute does not, for example, leave the plaintiffs facing "practically insurmountable defenses" or deny them a reasonable possibility of obtaining legal redress. *See Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 730 P.2d 186 (1986); *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977). Nor do we believe that the right to a lump sum award is so basic that its abrogation amounts to the deprivation of a fundamental interest. A particular measure of damages is an economic interest, and legislation affecting an economic interest need only rest upon a rational basis. *See Dandridge v. Williamson,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *American Bank & Trust Co. v. Community Hosp. of Los Gatos–Saratoga, Inc.,* 36 Cal.3d 359, 204 Cal.Rptr. 671, 683 P.2d 670 (1984).

As opposed to the strict scrutiny test, the rational basis test allows the legislature the "greatest leeway" in dealing with perceived social problems. *See Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984). A statute that benefits or burdens one class over another will be upheld under the rational basis test if the court finds any legitimate state interest in the subject matter and the classification rationally furthers the legislative purpose. *See id.* at 78, 688 P.2d 961. Under the rational basis test, the statute is presumed to be constitutional, and the party asserting otherwise bears the burden of demonstrating that it

is not. *See Eastin,* 116 Ariz. at 580, 570 P.2d 744.

We cannot say, on the record now before us, that there is no basis for the perception that there is a problem relating to medical malpractice insurance premiums that warrants legislative intervention. We cannot say, on the record now before us, that allowing periodic payments of a portion of the judgment in medical malpractice cases is not a rational way of attempting to deal with that perceived problem. Accordingly, the plaintiffs have not met their burden of demonstrating that the ·statute denies them the equal protection of the laws.

## THE PERIODIC PAYMENT STATUTE IS NOT A SPECIAL LAW

The Arizona Constitution, art. IV, part 2, § 19 provides:

> [no] local or special laws shall be enacted in any of the following cases....
>
> ....
>
> 13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises.

The plaintiffs argue that the periodic payment statute, which applies only in medical malpractice cases, violates this provision. We disagree, because a legally identical point was decided to the contrary in *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977). In that case, the supreme court held that a statute which abrogated the collateral source rule *in medical malpractice cases only* was not violative of the clause forbidding the enactment of a special law. The case before us is legally indistinguishable from *Eastin v. Broomfield.* We are not free to ignore that decision.

It is ordered remanding this cause to the superior court for further proceedings consistent with this opinion.

GRANT, P.J., and JACOBSON, J., concur.

## APPENDIX

The periodic payment statute provides as follows:

### § 12–581. Definitions

In this article, unless the context otherwise requires:

1. "Bodily injury" means bodily harm, sickness, disease or emotional or mental distress, including death resulting from any of these conditions at any time, sustained by a person.

2. "Claimant" means a person suffering bodily injury, a person claiming on behalf of or as a result of bodily injury to another person, the representative of the estate of a deceased person or a beneficiary of a wrongful death action.

3. "Costs of health care" means medical, custodial, rehabilitative and related expenses.

4. "Economic loss" means pecuniary harm for which damages are recoverable.

5. "Future damages" means economic loss and noneconomic loss arising from bodily injury which accrues after trial of a claim under this article.

6. "Noneconomic loss" means nonpecuniary harm for which damages are recoverable but does not include punitive or exemplary damages.

7. "Past damages" means economic loss and noneconomic loss arising from bodily injury which have accrued before a claim is tried under this article, including punitive or exemplary damages.

8. "Qualified insurer" means an insurer, self-insurer, plan or arrangement approved by the director of the department of insurance.

### § 12–582. Election of periodic payments

A. This article applies to any trial involving a claim for future damages arising out of a medical malpractice action. Any party may elect to receive or pay future damages for economic losses in periodic installments in accordance with this article.

B. The election shall be made pursuant to court rule. Any objection to the election shall be made pursuant to court rule.

C. An election filed by a party claiming or responding to a claim for future dam-

ages is effective unless an objecting party shows good cause pursuant to § 12–583 why the trial or arbitration of a claim affecting the party should not be conducted under this article.

**D.** If an effective election is on file at the commencement of trial, all claims, including third party claims, counterclaims and claims consolidated for trial shall be tried under this article unless the court finds that a separate trial or other proceeding should be held on some or all of the claims that are not the subject of the election.

**E.** An effective election may be withdrawn only by consent of all parties to the claim to which the election relates.

### § 12–583. Good cause hearing

**A.** In a hearing held to determine whether good cause exists not to try a claim under this article, the court shall consider the circumstances of the parties and all relevant factors, including, but not limited to:

1. Whether the risk that a lump sum award would be dissipated is insignificant.

2. Whether the amount of future damages is too small or the time over which the payments would be made is too short or the economic savings are not such as to warrant payment in periodic installments.

3. Whether a party responding to a claim for future damages is unable to fund a periodic installment judgment.

**B.** If the objecting party fails to establish by clear and convincing evidence that good cause exists not to try a claim under this article, the court shall overrule the objection to the election.

**C.** If the court finds that good cause exists not to try a claim under this article, the court shall set forth in the record the reasons for the finding.

### § 12–584. Special findings; future damages

**A.** If liability is found in a trial conducted under this article, the trier of fact shall make separate findings for each claimant specifying the amount of any:

1. Past damages in a lump sum.

2. Future damages for noneconomic loss in a lump sum.

3. Future damages and the periods over which they will accrue, on an annual basis, for each of the following types:

(a) Costs of health care.

(b) Other economic loss.

**B.** The findings for future costs of health care of an injured claimant shall reflect the costs and losses during each year the trier of fact finds the claimant will sustain those costs and losses. The findings of other future economic loss of an injured claimant shall be based on the losses that the claimant or beneficiary will sustain over the period of time the claimant or the deceased would have lived but for the bodily injury on which the claim is based.

**C.** The trier of fact may find that future costs of health care will continue for the duration of the claimant's life, in which case it is not necessary to decide how long the claimant will live. If the trier of fact so finds, the trier of fact shall determine the costs of health care the claimant will incur each year while living.

### § 12–585. Evidence of future damages

**A.** The calculation for all future economic damages shall reflect future changes in earning power or the purchasing power of the dollar. Future damages shall not be discounted to present value, except pursuant to § 12–589.

**B.** Unless the court otherwise directs or the parties otherwise agree, the annual amounts for future damages shall be prorated and paid at one month intervals during the year due. Each payment is payable on the first day of the month following its accrual.

### § 12–586. Entering a judgment for future damages

**A.** If special findings for future damages are made, the court shall enter judgment pursuant to the following procedures:

1. The court shall apply the findings of past and future damages any applicable rules of law in calculating the respective amounts of past and future damages each claimant is entitled to recover and each party is obligated to pay.

2. The court shall specify payment of attorney fees and litigation expenses separately from the periodic installments payable to the claimant pursuant to any agreement entered into between the claimant and his attorney. Under a percentage attorney fee contract, unless the contract specifies otherwise, the portion of the fee applicable to the recovery of the periodic installments of future damages is computed by multiplying the fee percentage times the cost of an annuity which would satisfy the funding requirements under §§ 12–587 and 12–588.

B. A reduction in installments of future damages made pursuant to this section for payment of attorney's fees shall reduce proportionally all periodic installments for future damages.

C. The court shall enter judgment in lump sum for past damages and for any future damages payable in lump sum or otherwise under this section. The court shall also enter judgment for the payment in periodic installments of the remaining amounts of future damages, without reduction to present value. The periodic installments shall be set forth in the judgment in a schedule that shows the annual amount due in each year the trier of fact has found that losses will accrue. If a finding has been made that costs of health care will continue for the duration of the claimant's life, the judgment shall set forth the finding and the amount of those annual losses.

### § 12–587. Funding judgments for periodic installments

A. Each party liable for all or a portion of a judgment containing periodic installments shall provide funding, separately or jointly, for the unpaid installments in a form prescribed in § 12–588. The funding shall be provided not later than the date judgment is subject to execution or not later than thirty days after the judgment is entered, whichever is later, unless it is superseded or the power to execute on the judgment is otherwise suspended.

B. A liability insurer having a contractual obligation or a person adjudged to have an obligation to pay all or part of a judgment entered for periodic installments is obligated to provide funding to the extent of the contractual or adjudged obligation. In determining if a judgment containing periodic installments for future damages exceeds limits under a liability insurance policy, the installments for future damages in the judgment shall be discounted to present value under § 12–589 to compute the lump sum value. The lump sum value or the costs of an annuity which would satisfy the funding requirement for installments of future damages, whichever is less, must be added to the total of any lump sum damages contained in the judgment for each claimant. The amount so computed shall be compared to applicable limits under the policy.

C. A judgment creditor or successor in interest and any party having rights under subsection E of this section may at any time subsequent to the judgment request the court to find that funding was not provided or maintained with regard to a judgment obligation owing to the requesting party.

D. If a person who is the only person liable for a portion of a judgment for periodic installments fails to provide or maintain funding, the right to a lump sum judgment under subsection C of this section applies only against that person and the portion of the judgment owed.

E. If more than one person is liable for all or a portion of periodic installments ordered by the judgment, and the required funding is provided by one or more but fewer than all of the persons liable, those providing funding may bring an action to satisfy or protect rights of reimbursement from a person not providing funding. If a person who has provided funding seeks to enforce rights for funding against a nonfunding person, the court may order the nonfunding person to indemnify those providing funding for a proportionate share of

the cost of the funding provided or of the cost of an annuity as provided in § 12–588 which would satisfy the funding requirement.

F. If funding approved by the court has been provided, the judgment debtor on whose behalf the funding is provided is discharged and any lien against the judgment debtor is released. A liability insurer providing funding that meets the requirements of § 12–588 on behalf of a judgment debtor, to the extent it is obligated to do so under any applicable liability insurance contract, is deemed to have satisfied its duty to pay damages.

G. The court in which a trial is conducted under this article shall retain jurisdiction to enforce the provisions of this section if a judgment for periodic installments is entered.

### § 12–588. Form of funding

A. Funding authorized or required for payment of a judgment for periodic installments shall be approved by the court as sufficient to guarantee financial solvency and be in one or more of the following forms:

1. An annuity contract issued by one or more qualified insurers.

2. An agreement by one or more qualified insurers to fund the judgment.

3. Any other form of funding which the court approves and to which the claimant consents.

B. Funding under this section qualifies as a required supersedeas bond.

C. In the event of a qualified assignment under § 130 of the internal revenue code of 1986, as amended, the qualified assignee and any qualified insurer shall be jointly and severally liable but the qualified insurer's obligation shall be the primary obligation.

### § 12–589. Discounting future damages to present value

A. If future damages are ordered to be paid in advance of the period to which they apply, the court shall compute the present value of the future payments by discounting each remaining annual payment by a rate of interest equal to the interest rate of the most recent issue of fifty-two week United States treasury bills sold before the date damages are discounted.

B. To compute the present value of a lifetime award of future damages pursuant to § 12–584, subsection C, the duration of the term of payments shall be the life expectancy of the claimant at the time the computation is made prescribed by the race neutral life expectancy table for the appropriate sex in the current population survey collected by the bureau of the census for the bureau of labor statistics of the United States department of labor.

### § 12–590. Effect of death on periodic installments

A. The liability for payment of periodic installments for costs of health care not yet due at the death of the person entitled to receive the benefits terminates on the death of the person. Liability for payment of any other installments or portions of installments not yet due at the death of the person entitled to receive them terminates, except as provided in subsections B and C.

B. If, in an action for wrongful death, a judgment for periodic installments provides payments to more than one person and one or more but fewer than all of them die, the surviving beneficiaries are entitled to shares proportionate to their shares in the periodic installments not yet paid to the deceased beneficiary or beneficiaries. The surviving beneficiaries are not entitled to receive payments beyond the periods specified for such beneficiaries in the judgment.

C. If, in an action other than for wrongful death, a judgment for periodic installments is entered and a person entitled to receive benefits for economic losses other than for costs of health care under the judgment dies, any periodic installments not yet due at the person's death shall be paid to a beneficiary designated in writing by the deceased or, in the absence of such a designation, to the estate of the deceased.

## § 12–591. Assignment of periodic installments

An assignment of or an agreement to assign any right to periodic installments for future damages is not enforceable except for:

1. The payment of alimony, maintenance, spousal support or child support.

2. The costs of products, services or accommodations provided or to be provided by the assignee for health care.

3. Attorney fees and other litigation expenses incurred in obtaining or enforcing the judgment.

## § 12–592. Exemption of benefits

Periodic installments for future damages for loss of earnings or loss of support for beneficiaries of a judgment entered in a wrongful death action are exempt from garnishment, attachment, execution and any other process or claim to the extent wages or earnings are exempt under any applicable law. Periodic installments for all other future damages are exempt under garnishment, attachment, execution and any other process or claim except to the extent they may be assigned pursuant to § 12–591.

## § 12–593. Duties of the director of the department of insurance and insurance companies

A. The director of the department of insurance shall adopt rules:

1. For determining which insurers and assignees are financially qualified to provide and maintain the funding required under this article and to be designated as qualified insurers.

2. To require insurers to provide and maintain funding under § 12–587 if required by court order.

3. For publishing and revising a list of persons who have been designated by the director as qualified insurers.

B. The director shall annually review and evaluate the effectiveness of the system of periodic payments. If pursuant to such review and evaluation, the director determines that the system of periodic payments is effectively reducing the cost of medical malpractice tort claims for bodily injury, the director shall order appropriate actuarially justified rate adjustments based on such findings.

C. In order to qualify under this section, an insurance company shall:

1. Have at least an "A+" (superior) rating and a financial size category of VIII in the current edition of best insurance reports as published by A.M. Best Company.

2. Have no more than one ratio falling outside the usual range according to the current ratio published by the national association of insurance commissioners insurance regulatory information system.

3. Be licensed to do business in a state that has an applicable insurance guaranty fund of at least one hundred thousand dollars.

4. Meet any other standards that the director deems necessary to assure that funding will be provided and maintained. A qualified insurer may be a subsidiary of a parent insurance company if the parent insurance company qualifies as a qualified insurer and guarantees the obligation of the subsidiary.

## § 12–594. Arbitration and settlement agreements

A. This article also applies to claims for bodily injury arising out of medical malpractice that are subject to arbitration either by law or if the parties have agreed to its application by contract.

B. Parties to an action on any claim for bodily injury arising out of medical malpractice may file with the clerk of the court in which the action is pending, or, if none is pending, with the clerk of a court of competent jurisdiction over the claim, a settlement agreement for future damages payable in periodic installments. The settlement agreement may provide that one or more sections of this article apply to it.