842 P.2d 1355

**Laura CHURCH, Plaintiff–Appellant,**

v.

**RAWSON DRUG & SUNDRY COM-
PANY, a California corporation,
Defendant–Appellee.**

No. 1 CA–CV 90–0357.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 1, 1992.

Review Denied Jan. 12, 1993.

The Langerman Law Offices by Amy G. Langerman and Arthur N. Gorman, Phoenix, for appellants.

Burch & Cracchiolo by Brian Kaven, Daryl Manhart and Karen J. Williams, Phoenix, for appellee.

Mitten, Goodwin & Raup by Roger C. Mitten, Gary A. Fadell and Donald F. Froeb, Phoenix, for amicus curiae Arizona Hosp. Ass'n.

Fennemore Craig by Timothy Berg and Janice K. Procter-Murphy, Phoenix, for amici curiae.

Snell & Wilmer by Barry D. Halpern and Thea Foglietta Silverstein, Phoenix, for amicus curiae Arizona Medical Ass'n.

Snell & Wilmer by Lawrence F. Winthrop and Kevin J. Parker and Teilborg, Sanders & Parks, P.C. by Stephen Paul Forrest and Bruce C. Smith, Phoenix, for amicus curiae Phoenix Ass'n of Defense Counsel.

Grant Woods, Atty. Gen. by Jonathan H. Schwartz and Thomas J. Dennis, Asst. Attys. Gen., Phoenix, for amicus curiae State of Ariz.

## OPINION

KLEINSCHMIDT, Judge.

In this case, we hold that the statute which abolishes the doctrine of joint and several liability is constitutional. Accordingly, we affirm the judgment entered in the trial court.

The case arises out of an injury which Laura Church suffered while she was working for ABCO Markets, Inc. She was unloading containers of merchandise that had been received from Rawson Drug and Sundry Company when the containers fell on her. She received workers' compensation benefits from ABCO, and she and her husband brought a negligence action against Rawson, alleging that Rawson had stacked the containers on pallets in a careless manner. The husband's case was dismissed and is not a part of this appeal.

Before trial, the plaintiff filed a motion *in limine* to preclude the mention at trial of any negligence on the part of ABCO. She anticipated that Rawson would argue that ABCO was negligent in ignoring complaints about the weight of the containers and how they were stacked and that pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–2506, which allows the jury to apportion fault among those who caused the injury, part of the fault should be allocated to ABCO. She argued that if the finder of fact allocated a percentage of fault to ABCO, the amount of money she would ultimately receive would be reduced because ABCO, as her employer, is immune from suit under the workers' compensation law. The trial court denied the motion.

At trial, the jury found in favor of the plaintiff and set her damages at $52,625.50. The jury allocated fault equally between

the plaintiff, Rawson, and ABCO. Thus, the total amount the plaintiff will recover is one third of $52,625.50, which is $17,-541.83.

The plaintiff appeals from the judgment and argues that A.R.S. § 12–2506, the statute abolishing joint and several liability:

(1) violates the nonabrogation of damages provision found in article 18, § 6 of the Arizona Constitution;

(2) violates the nonlimitation of damages provision found in article 2, § 31 of the Arizona Constitution;

(3) violates the guarantee of equal privileges and immunities found in article 2, § 13 of the Arizona Constitution;

(4) violates due process of law guaranteed by article 2, § 4 of the Arizona Constitution; and

(5) violates the separation of powers guaranteed by article 3 of the Arizona Constitution.

## THE STATUTORY SCHEME

The full text of the statute which deals with this topic is set forth in the appendix to this opinion. Arizona Revised Statutes Annotated § 12–2506 was adopted in 1987 and applies to causes of action filed after January 1, 1988. Before that date, damages in actions for personal injury, property damage and wrongful death were indivisible, and each defendant was liable for the entire judgment, regardless of a particular defendant's degree of fault. Since 1988, each defendant is liable "only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault." A.R.S. § 12–2506(A). Joint and several liability still applies when two parties to an action are acting in concert, when one party is an agent of another party, or when a cause of action relates to hazardous wastes or substances. A.R.S. § 12–2506(D). In allocating fault, the trier of fact must consider the fault of any person who contributed to the injury, regardless of whether that person is or could have been a party to the action. A.R.S. § 12–2506(B). However, the assessment of fault against a nonparty will not subject that nonparty to liability in the case then before the court or in any other action. *Id.*

## THE STATUTE NEITHER ABROGATES THE RIGHT TO BRING AN ACTION FOR DAMAGES NOR IMPERMISSIBLY LIMITS THE AMOUNT OF RECOVERY FOR AN INJURY

■ The plaintiff argues that the statute abolishing joint and several liability offends the provision of the Arizona Constitution prohibiting the abrogation of the right to bring an action for damages. Article 18, § 6 of the constitution, the nonabrogation clause, provides:

The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

The parties and amici curiae raise several distinct arguments relating to the application of this constitutional provision.

Amicus curiae Phoenix Association of Defense Counsel and amicus curiae Arizona Hospital Association both contend that article 18, § 6 of the Arizona Constitution only limits the right of the legislature to affect the common law as the common law existed at the time of the adoption of the constitution in 1912. From this premise, they go on to argue that the doctrine of joint and several liability, in cases where the actions of several tortfeasors who were not acting in concert contributed to an indivisible injury, was first recognized in Arizona in 1966 when our supreme court decided the case of *Holtz v. Holder,* 101 Ariz. 247, 418 P.2d 584 (1966). It follows, they say, that the nonabrogation clause does not apply to the case now before us.

In recent years, our supreme court has addressed the question whether the nonabrogation clause protects causes of action that came into being after the adoption of our constitution on three occasions. Twice it has decided that the nonabrogation clause protects such causes of action. *See Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 17–18, 730 P.2d 186, 194–95 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987); *Humana Hospital*

**346**

*v. Superior Court*, 154 Ariz. 396, 742 P.2d 1382 (App.1987). More recently, in a split decision, it reached a different conclusion in *Bryant v. Continental Conveyor & Equip. Co.*, 156 Ariz. 193, 751 P.2d 509 (1988). Since the composition of the court changed between the time that *Humana Hospital* and *Bryant* were decided, and has changed again since *Bryant*, this question may still be an open one. We need not turn our decision on this point. Even if we assume that the nonabrogation clause protects causes of action that came into being after the adoption of our constitution, and even if we assume that the kind of joint and several liability that concerns us here was first established by *Holtz v. Holder*, the statute abrogating joint and several liability is nonetheless constitutional.

█ A party to an action does not have a vested right in a particular remedy or mode of procedure. *See Town of Chino Valley v. State Land Dept.*, 119 Ariz. 243, 580 P.2d 704 (1978). However, "[the legislature] may not, under the guise of 'regulation,' so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action." *Barrio v. San Manuel Division Hospital for Magma Copper Co.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984) (statute of limitation which required minor injured when below the age of seven to bring a medical malpractice action by age ten—regardless of ability to do so or nature of child's caretakers—held unconstitutional).

The defendants, citing language in *Barrio* and other cases, take the position that before the abrogation clause is implicated, the right to bring an action must be completely abolished. The plaintiff takes a much broader view. She relies heavily on the case of *Boswell* for, as she characterizes it, the proposition that article 18, § 6 is a substantive constitutional guarantee of the right to obtain full redress for injuries—a guarantee the statute has nullified.

The plaintiff reads *Boswell* too expansively. That case dealt with a retraction statute that changed the common law of defamation. The statute provided that a media defendant who retracted the defamatory statement was only liable for damages done to a plaintiff's property, business, trade, profession or occupation, and not for damages for loss of reputation or for emotional distress unless the plaintiff could prove that the defamation was published with actual malice. The defendant newspaper had carried a story which mistakenly accused the plaintiffs of committing a crime. The trial court instructed the jury that the plaintiffs could only recover for damage to their property, business, trade, profession or occupation. It did not instruct as to damages for loss or reputation or emotional distress.

After dealing with a number of arguments that do not concern us here, the court proceeded to address whether the statute was a permissible regulation of a right of action. It said:

> We differentiate between abrogation and regulation by determining whether a purported legislative regulation leaves those claiming injury a reasonable possibility of obtaining legal redress.

*Boswell*, 152 Ariz. at 18, 730 P.2d at 195. It observed that the retraction statute would prevent many defamed people from recovering damages for injury to reputation or emotional suffering because it created insurmountable hurdles to recovery for large and foreseeable classes of victims. On this basis, it concluded that the retraction statute was unconstitutional.

Unlike the retraction statute, the statute abolishing joint and several liability does not eliminate a remedy by setting a standard for recovery that will foreclose a large class of claimants from seeking redress. It is true, however, that as a practical matter the damages which the plaintiff in this case will receive, and the damages many plaintiffs in other cases will receive, will be less than they would receive if joint and several liability were the rule in force. It is at this point that the argument relating to the nonabrogation clause of the constitution becomes intertwined with the related constitutional provision proscribing a limitation on damages. Article 2, § 31 of the Arizona Constitution provides:

No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person.

The fact that these and many other plaintiffs will recover less than they would have recovered before joint and several liability was abolished is attributable in part to the fact that plaintiff's employer's negligence contributed to her injury. Because her employer is immune under the workers' compensation law from having to pay damages for the injury it caused her, the plaintiff's recovery is reduced by the percentage of the employer's fault. *See* A.R.S. § 23–906. The recent case of *Dietz v. General Electric Co.*, 169 Ariz. 505, 821 P.2d 166 (1991), is particularly pertinent in this respect. In *Dietz*, our supreme court construed a different question presented by the statute which abolishes joint and several liability. There, an employee of a mining company was injured on the job. He accepted workers' compensation and later brought an action against General Electric for his injuries, alleging that it had negligently manufactured certain equipment he had been using when he was injured. The question was whether General Electric could name the plaintiff's employer as a nonparty at fault for purposes of apportioning damages, and the resolution of that question depended upon the interplay between the statute abolishing joint and several liability and another statute, Arizona's version of the Uniform Contribution Among Tortfeasors Act, A.R.S. § 12–2501 to § 12–2509. The supreme court ruled that General Electric could name the employer as a nonparty at fault for purposes of apportioning damages. The plaintiff in *Dietz* urged that the provisions of the Arizona Constitution prohibiting the abrogation of the right to sue for damages and prohibiting limitations on damages precluded the result the' court reached. He argued that it was particularly unfair to allow his employer's negligence to be considered in the reduction of any damages awarded to him because his employer would have a lien against his recovery from General Electric to the extent of compensation payments the employer had made. The court said:

We do not believe the construction we give to the statutes violates the constitutional provisions under the circumstances presented by this case. Dietz is effectively prevented from recovering damages against his employer; but, absent rejection of his rights under the workers' compensation law, Dietz never had a claim against Magma [the employer]. The constitution contemplates precisely this result. *See* Ariz. Const. art. 18, § 8; *Mariscal v. American Smelting and Refining Co.*, 113 Ariz. 148, 548 P.2d 412 (1976). It is true that Dietz' recovery is diminished to some extent by the statutory provisions (A.R.S. § 23–1023(C)) giving Magma, the immune employer, a lien on the recovery Dietz obtains from the non-immune defendants. But the lien provisions in favor of immune employers have been part of the workers' compensation system since 1925, when the predecessor to the current statute was adopted.

*Dietz*, 169 Ariz. at 510–11, 821 P.2d at 171–72.

Here, as in *Dietz*, the plaintiff never had a cause of action against her employer. In the context of this case then, the effect of the statute precluding full recovery is the result of the competing policy embodied in the workers' compensation statute.

The plaintiff has another argument. She points out that the statute will also prevent many plaintiffs from recovering full damages because the plaintiff's recovery, in comparison to what would have been received if the rule of joint and several liability were in effect, will be reduced because one co-defendant may have plenty of money to cover the total damages and another co-defendant may not have sufficient funds to cover its proportionate share of the loss. The constitutional proscription against abrogating damages is not, however, a guarantee of the collectability of a judgment. *See Ruth v. Industrial Comm'n*, 107 Ariz. 572, 490 P.2d 828 (1971) (workers' compensation lien on a judgment is not an unconstitutional limitation on recovery because article 18, § 6 is not intended to insure recoverability); *Smith v. Belli-*

*na*, 171 Ariz. 511, 831 P.2d 1279 (App.1991) (periodic payment statute not unconstitutional on the grounds that it may reduce the chance that a judgment can be collected).

The plaintiff cites authority for the proposition that however many people were negligent, her injury is indivisible and that the doctrine of joint and several liability plays a legitimate role in allowing an injured person to obtain adequate compensation. *See W. Prosser and P. Keeton, The Law of Torts*, § 47, at 328 (5th Ed.1984); *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). She points out that the statute allocates responsibility based on a comparison of fault as opposed to a comparison of liability. However true that may be, the legislature has given effect to the competing principle that it is unjust to place the entire burden of loss on one party when that party was only partially at fault. *See Quadrone v. Pasco Petroleum Co., Inc.*, 156 Ariz. 415, 417, 752 P.2d 504, 506 (App.1987).

Finally, in our opinion, there is something of an analogy between what the legislature has done in abolishing joint and several liability and what it did earlier in abolishing the collateral source rule in medical malpractice actions and in the field of workers' compensation. In *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977), the court rejected the argument that the abolition of the collateral source rule, which had precluded the introduction of evidence of recovery from sources other than the defendant, was an impermissible limitation on the right to recover damages. Although the court recognized that the abolition of the collateral source rule did not compel the finder of fact to take into account other sources of recovery when setting the amount of damages, it acknowledged that the change in the law would probably result in smaller verdicts.

In summary, any reduction in recoveries that plaintiff will experience will result from the interaction of the new statute with principles which have already passed constitutional muster. The statute does not offend the clauses of the Arizona Constitution precluding the abrogation of the right to bring an action or limiting damages.

## THE STATUTE DOES NOT DENY THE PLAINTIFF EITHER THE EQUAL PROTECTION OF THE LAWS OR DUE PROCESS OF LAW

The plaintiff also contends that the statute denies her equal protection of the laws as guaranteed by article 2, § 13 of the Arizona Constitution because it discriminates against certain classes of plaintiffs. She points out that plaintiffs who are injured by multiple tortfeasors, some of whom are insolvent or immune from suit, will not receive full recovery for their injuries while plaintiffs who are injured by tortfeasors who are solvent and subject to suit will receive full recovery. The retention of joint and several liability for injuries caused by defendants acting in concert, by an agent or a servant of a defendant or by a defendant who is negligent in relation to a hazardous waste or substance creates still further classifications. None of these classifications, plaintiff says, can survive equal protection analysis.

The plaintiff also argues that the statute deprives tort victims of the right to substantive due process of law guaranteed to them by article 2, § 4 of the Arizona Constitution. She says that the law takes away the tort victim's common law right to recover full damages from each tortfeasor who proximately caused the injury.

Courts which have construed constitutional provisions like those the plaintiff invokes in this case have recognized that, conceptually, the review of due process and equal protection claims is similar. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 93, 98 S.Ct. 2620, 2640, 57 L.Ed.2d 595 (1978). The due process clause protects liberty and property interests while the equal protection clause protects against discriminatory classifications. *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399, 406 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

## A. *The Plaintiff Has Standing*

The threshold question in any constitutional challenge to a statute is whether the party asserting the claim has standing. Rawson and several of the amici curiae assert that the plaintiff does not have standing to challenge the statute on equal protection grounds because the statute classifies defendants, and the plaintiff is not a defendant in this action. What this argument overlooks is that the classification of defendants directly works a classification of plaintiffs as well. Some plaintiffs will receive less than others, depending upon how or by whom they are injured. All that is necessary to assert the constitutional challenge is that the individual making the assertion be confronted with some "threatened or actual injury" from the operation of the statute. *State v. Herrera,* 121 Ariz. 12, 15, 588 P.2d 305, 308 (1978), *cert. denied,* 441 U.S. 949, 99 S.Ct. 2175, 60 L.Ed.2d 1054 (1979). Because the statute affects the amount the plaintiff will recover, she has standing to challenge it.

## B. *The Statute Must Be Tested Against a Rational Basis Standard*

There are three different standards of review for determining whether a statute violates the equal protection clause. The strict scrutiny test is the most stringent. It is employed in cases where a statute applies to a suspect class or impinges on a fundamental right. *Bryant v. Continental Conveyor & Equip. Co.,* 156 Ariz. 193, 196, 751 P.2d 509, 512 (1988). When the strict scrutiny test applies, the statute in question must serve a compelling state interest.

The plaintiff is not a member of a suspect class. A suspect class is one which has historically suffered from discrimination, such as race, nationality or alienage. *See Benson v. Arizona Board of Dental Examiners,* 673 F.2d 272, 277 n. 14 (9th Cir.1982).

The plaintiff argues, however, that because everyone is a potential tort victim but no one knows in advance who will be injured, potential plaintiffs are at a disadvantage in protecting their interests against well funded lobbying groups like insurance companies, manufacturers and medical associations. She infers, without citing case authority, that this circumstance compels the application of the strict scrutiny test. We are reluctant to expand the application of the strict scrutiny test on the basis posited, especially since our supreme court held in *Kenyon v. Hammer,* 142 Ariz. 69, 79, 688 P.2d 961, 971 (1984), that medical malpractice plaintiffs were not a suspect class.

We turn to whether the strict scrutiny test applies because the statute may infringe a fundamental right. In *Kenyon v. Hammer,* the supreme court was faced with the question whether a three-year statute of limitation which barred a cause of action against health care providers even though the victim did not know, and could not have discovered, that an injury existed violated the equal protection clause. The court held that the right to bring and pursue an action is a "fundamental right," the abridgement of which requires the application of the strict scrutiny test. In doing so, however, it discussed the earlier decision of *Eastin v. Broomfield.* It observed that in *Eastin,* it declined to apply a strict scrutiny test to those parts of the medical malpractice statute, including the abolition of the collateral source rule, that did not affect the essence of the fundamental right to bring the action. In the case now before us the plaintiff's right to bring and maintain the action remains intact. As we have already observed, there is something of an analogy between the abolition of joint and several liability and the abolition of the collateral source rule. Since neither goes to the essence of the right to maintain an action, the strict scrutiny test does not apply in this case.

The second standard of review, means-end scrutiny, is confined to classifications involving gender and illegitimacy of birth. *Kenyon,* 142 Ariz. at 78, 688 P.2d at 970. A statute must be substantially related to an important government interest to be upheld under this intermediate test. *Id.* The plaintiff argues that means-end scruti-

ny should be extended to include plaintiffs such as herself. Since, as we discuss below, the rational basis test is more appropriate, we decline to do so.

 The correct standard of review in this case is the rational basis test. Social and economic legislation that does not involve a suspect classification or a fundamental right will be upheld when it is rationally related to a legitimate government purpose. *Carr v. Beech Aircraft Corp.,* 758 F.Supp. 1330, 1334 (D.Ariz.1991); *Kenyon,* 142 Ariz. at 78, 688 P.2d at 970; *Eastin,* 116 Ariz. at 583, 570 P.2d at 751. Such legislation carries a presumption that it is rational, and that presumption can only be overcome by a clear showing of arbitrariness or irrationality. *Carr,* 758 F.Supp. at 1334. In considering whether a statute rationally advances a legitimate goal, a court can consider "either the actual basis on which the legislature acted or any hypothetical basis on which it might have acted." *Id.*

C. *The Statute Meets the Rational Basis Test*

The 1987 Minutes of the House of Representatives and Senate Committees on Judiciary do not fully set forth the debate over the statute abolishing joint and several liability. They do, however, reveal that the legislature had three objectives in mind. First, the abolition of joint and several liability was considered to be consistent with a pure comparative negligence system whereby a plaintiff's recovery is diminished by the degree to which the plaintiff's conduct contributed to the injury. Second, the legislature thought it more fair to impose liability according to degree of fault, rather than to have one who is marginally at fault pay all of the damages. Third, the statute, by protecting defendants from paying more than their share of fault, was an attempt to alleviate a perceived crisis caused by rising insurance rates.

 The plaintiff argues that the statute does not further these interests in a rational way. First, she attacks the "consistency" rationale. She says that under comparative negligence, it makes sense to reduce a plaintiff's recovery because the plaintiff is at fault, but it does not make sense to reduce a defendant's liability because another defendant is also at fault. This "consistency" rationale for the statute abolishing joint and several liability is theoretical. In 1984, the legislature enacted the Uniform Contribution Among Tortfeasors Act which adopted the principles of comparative negligence. *See* A.R.S. § 12–2501 to § 12–2509. The main principle of comparative negligence is that it is fair to divide damages between the parties who are at fault based on each party's degree of fault. *See Law v. Superior Court,* 157 Ariz. 147, 156, 755 P.2d 1135, 1144 (1988); *W. Prosser and P. Keeton, The Law of Torts,* § 67, at 470 (5th Ed.1984). The theory which underlies the comparative negligence statute is the same theory upon which the statute abolishing joint and several liability is based. It is not so much that the statutes are consistent that is important, as it is the fact that the abandonment of the concept of indivisible injury paved the way for the abolition of joint and several liability.

The plaintiff next argues that the statute does not achieve a fair apportionment of liability. She says that placing the entire burden of the immune, absent, or insolvent tortfeasor on the plaintiff is irrational, and she, as we have mentioned earlier, cites cases and articles which are critical of the concept of abolishing joint and several liability. The plaintiff urges that if apportioning liability according to fault is a legitimate end, the only rational means of achieving that end would be to adopt the approach of the Uniform Comparative Fault Act. *See* 12 U.L.A. § 2, comment (Supp.1992). Under the Uniform Act, joint and several liability is retained, but if one of several judgment debtors is insolvent, the remaining judgment debtors pay the insolvent debtor's share according to their respective percentages of fault.

 We recognize the competing values the plaintiff advances. There may be other, and perhaps better, ways of achieving the goal of fairness in this area. However true that may be, it does not mean that the

method the legislature selected is irrational. Even if the classification results in some inequality, it is not unconstitutional if it rests on some reasonable basis. *Eastin,* 116 Ariz. at 582, 570 P.2d at 750 (citing *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)). For example, the Supreme Court of Kansas had this to say in the case concerning the abolition of joint and several liability.

There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss. The same is true if one of the defendants is wealthy and the other is not. Previously, when the plaintiff had to be totally without negligence to recover and the defendants had to be merely negligent to incur an obligation to pay, an argument could be made which justified putting the burden of seeking contribution on the defendants. Such an argument is no longer compelling because of the purpose and intent behind the adoption of the comparative negligence statute.

*Brown v. Keill,* 224 Kan. 195, 580 P.2d 867, 874 (1978).

█ The plaintiff also insists that there was no real insurance crisis which prompted the enactment of the statute, and that even if there was a crisis, it is doubtful that limiting joint and several liability will have a salutary impact on the availability and cost of insurance because defendants still remain subject to suit, and they are still subject to paying the full amount of the judgment if there are no other tortfeasors involved.

We must assume that when the statute was passed, the legislature was persuaded

that such a crisis did exist and that there was some reason to believe that the measure adopted would help alleviate it. *See Eastland v. United States,* 421 U.S. 491, 508, 95 S.Ct. 1813, 1824, 44 L.Ed.2d 324 (1975). On the basis of the record before us, we cannot substitute our judgment for the legislature's and conclude that the "crisis" was a fiction and the cure would not at least tend to alleviate it. *See Arizona Downs v. Arizona Horsemen's Foundation,* 130 Ariz. 550, 556, 637 P.2d 1053, 1059 (1981); *Carr,* 758 F.Supp. at 1334.

Next, the plaintiff contends that the statute is arbitrary and irrational in retaining joint and several liability when two parties to an action are acting in concert, when one party is an agent of the other party or when a cause of action relates to hazardous substances. There is no legislative history relating to these exceptions, but if we can perceive any rational justification for them, we must uphold the statute. *Arizona Downs,* 130 Ariz. at 556, 637 P.2d at 1059.

█ When parties act in concert, it is well settled that each should be held responsible for all of the actions of the other because each either intends or can foresee how the actions of each will combine to cause the harm. *See Bunker Hill & Sullivan Mining & Concentrating Co., et al. v. Polak,* 7 F.2d 583 (9th Cir.), *cert. denied,* 269 U.S. 581, 46 S.Ct. 106, 70 L.Ed. 423 (1925). Similarly, when a party is acting as an agent for another, the agent must be acting under the control of and for the benefit of the principal for an agency relationship to exist. *Salt River Valley Water Users' Association v. Giglio,* 113 Ariz. 190, 195, 549 P.2d 162, 167 (1976). This is similar to two persons acting in concert.

It is possible that the legislature excepted damages caused by hazardous substances and wastes because there are extensive federal statutes that provide guidelines as to who may be liable for injuries caused by such substances, the defenses available and the amount of damages recoverable. *See* The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 to § 9657; The Resource Conservation and

Recovery Act (RCRA) 42 U.S.C. § 6901 to § 6987. Thus, there may well be a rational basis for the exceptions to the statute. Accordingly, it is not unconstitutional on these grounds.

### D. *No Quid Pro Quo is Required*

The plaintiff also argues that the statute offends due process of law because it takes away the right to recover full damages without providing a *quid pro quo.* Whether the due process clause of the fifth amendment to the United States Constitution requires a *quid pro quo* for the abrogation of common law rights remains an open question as far as the Supreme Court of the United States is concerned. *See Duke Power,* 438 U.S. at 87–88, 98 S.Ct. at 2637–38; *see also Fein v. Permanente Medical Group,* 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985) (appeal dismissed, White, J., dissenting).

The plaintiff cites a number of decisions from other jurisdictions which hold that when common law tort rights are abrogated or severely limited, the due process clause requires the substitution of a *quid pro quo. See, e.g., Waggoner v. Gibson,* 647 F.Supp. 1102 (N.D.Tex.1986) (cap on damages that affects the most severely injured undermined by lack of *quid pro quo* ); *Wright v. Central DuPage Hospital Ass'n,* 63 Ill.2d 313, 347 N.E.2d 736 (1976) (recognizing that workers' compensation act was the *quid pro quo* for limiting damages for injuries); *Sax v. Votteler,* 648 S.W.2d 661 (Tex.1983) (two-year statute of limitation for injured child abrogated right to bring an action without providing adequate substitute for redress of injuries). Other courts have reached a contrary result. *See Jones,* 555 P.2d at 409; *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657, 671 (1977); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978).

■ As the court recognized in *Sax v. Votteler,* in weighing whether a statute which abrogates rights is constitutional, it is appropriate to consider the extent to which the litigant's right to redress is affected. 648 S.W.2d at 666. While the abolition of joint and several liability will diminish awards in some cases, it neither deprives litigants of access to the courts nor sets a ceiling on how much they can recover. It affects a litigant's rights to a far less degree than did the legislation which was the subject of the cases which the plaintiff cites in support of her argument. We hold that due process does not mandate a *quid pro quo* for the abolition of joint and several liability.

## THE STATUTE DOES NOT VIOLATE THE DOCTRINE OF SEPARATION OF POWERS

Article 3 of the Arizona Constitution provides:

> The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in the Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

■ The plaintiff argues that the statute abolishing joint and several liability violates this constitutional provision because it impinges on the supreme court's power, granted under article 6 of the Arizona Constitution, to promulgate procedural rules for the conduct of matters before the courts. *See Readenour v. Marion Power Shovel,* 149 Ariz. 442, 444–45, 719 P.2d 1058, 1060–61 (1986). Not every statute which deals with court procedure will be treated as a violation of the separation of powers. Courts will honor such statutes as are reasonable and workable and that supplement, as opposed to conflict with, the rules promulgated by the court. *State ex rel. Collins v. Seidel,* 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984).

■ One specific argument that the plaintiff raises is that requiring the court to consider the actions of persons who are not a party to the case and who are unrepresented in the action is to sanction a trial by hearsay and innuendo without confrontation or cross-examination. She says that

this practice violates the hearsay rule embodied in the rules of evidence which have been adopted by the supreme court. We disagree. Trials in cases where there is a claim that a nonparty is at fault remain adversarial. One party or another will have an interest in demonstrating that a nonparty is, or is not, at fault. Nothing about the statute suspends the rules of evidence. All testimony and exhibits considered must still be admitted according to those rules.

The plaintiff also argues that the statute conflicts with existing law relating to joinder of parties embodied in Rule 19 of the Arizona Rules of Civil Procedure. She posits no example of how the statute and the rule conflict. Much of the thrust of Rule 19 is directed at protecting the interests of persons who have not been joined in the action. The statute abolishing joint and several liability expressly accommodates this concern by providing that no assessment of fault will subject a nonparty to liability, and an assessment of fault cannot be used in evidence against that person. While it is difficult to imagine in the abstract how the assessment of the fault of a nonparty in an action for personal injury, property damage, or wrongful death could bring the provisions of Rule 19 into play in such a way as to cause the court to dismiss the action, nothing in the statute would forbid the court from giving full effect to every facet of Rule 19. In any event, the plaintiff in this case does not suggest that she was in fact aggrieved by any conflict between the rule and the statute.

The judgment is affirmed.

JACOBSON, P.J., and GARBARINO, J., concur.

### APPENDIX

The full text of the statutes relating to the abolition of joint and several liability are as follows:

**§ 12–2506. Joint and several liability abolished; exceptions; apportionment of degrees of fault; definitions**

A. In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section. Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be entered against the defendant for that amount. To determine the amount of judgment to be entered against each defendant, the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault, and that amount is the maximum recoverable against the defendant.

B. In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit. Negligence of fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was, wholly or partially at fault. Assessments of percentages of fault for nonparties are used only as a vehicle for accurately determining the fault of the named parties. Assessment of fault against nonparties does not subject any nonparty to liability in this or any other action, and it may not be introduced as evidence of liability in any action.

C. The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and nonparties, shall be determined and apportioned as a whole at one time by the trier of fact. If two or more claimants have independent claims, a separate determination and apportionment of the relative degrees of fault of the respective parties, and any nonparties at fault, shall be made with respect to each of the independent claims.

D. The liability of each defendant is several only and is not joint, except that:

1. A party is responsible for the fault of another person, or for payment of the proportionate share of another party, if both parties were acting in concert or if a person was acting as an agent or servant of the party.

2. Nothing in this section prohibits the imposition of joint and several liability in a cause of action relating to hazardous wastes or substances or solid waste disposal sites.

E. If a defendant is found jointly and severally liable pursuant to subsection D, the defendant has the right to contribution pursuant to this chapter.

F. As used in this section:

1. "Acting in concert" means pursuing a common plan or design to commit a tortious act and actively taking part in it.

2. "Fault" means an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product.

### § 12–2507. Treatment of counterclaims and cross claims

A counterclaim or cross claim for injury to person or property or for wrongful death shall be treated as an independent claim for purposes of § 12–2506. A claim and counterclaim shall not be set off against each other except by agreement of both parties.

### § 12–2508. Redetermination of contribution shares

On motion made not later than one year after a judgment imposing joint and several liability and determining contribution rights is entered, the court shall determine whether all or part of a tortfeasor's contribution share under § 12–2502 is uncollectible from that tortfeasor. If a contribution share is totally or partially uncollectible, the court shall redetermine the contribution shares of the other tortfeasors so that the uncollectible contribution amount is paid, based on the ratio of the percentages of the contribution shares of the other tortfeasors. The court's order redetermining the contribution shares shall include a judgment for the uncollectible amount against the tortfeasor whose share is totally or partially uncollectible and in favor of the other tortfeasors.

### § 23–2509. Scope of contribution and comparative negligence

A. The right to contribution under §§ 12–2501 through 12–2504 applies to all tortfeasors whose liability is based on negligence, strict liability in tort or any product liability action, as defined in § 12–681, including warranty.

B. If an action involves claims for relief alleging both negligence and strict liability in tort, and if § 12–2505 is applied with respect to the negligence claims for relief, the reduction in damages under § 12–2505 shall be applied to the damages awarded against all defendants, except that contributory negligence, as distinguished from assumption of risk, is not a defense to a claim alleging strict liability in tort, including any product liability action as defined in § 12–681, except claims alleging negligence.

C. For purposes of § 12–2502, § 12–2503, subsection F and § 12–2505 with respect to cases involving assumption of risk, the relative degree of fault of a person strictly liable in tort is the defect causing injury to the claimant. Among two or more persons strictly liable in tort who are entitled to claim contribution against each other, the relative degree of fault of each is the degree to which each contributed to the defect causing injury to the claimant.