BEENE, Judge:
¶ 1 Renee Loncar ("Loncar") sued the State of Arizona and its associated representatives (collectively, the "State") for discrimination under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Privileges & Immunities and Preferential Treatment of Employees Clauses of the Arizona Constitution. Loncar claimed the State discriminated against her based on her gender by offering state employee benefits to unmarried same-sex couples but denying those benefits to unmarried heterosexual couples.
¶ 2 We hold that the State did not violate Loncar's state or federal constitutional rights because Loncar and her male domestic partner were not similarly situated with same-sex couples who were legally prohibited from marrying. The State's action was based on marriage eligibility and rationally related to a legitimate government purpose. Accordingly, we affirm the superior court's dismissal of Loncar's sex discrimination claims.
FACTS AND PROCEDURAL HISTORY
¶ 3 Loncar and her male domestic partner, Christopher Kutcher ("Kutcher"), had a long-term, committed partnership for several decades. They lived together, had two children together, and shared income and expenses, but they were not married. In 2006, Loncar was hired by the State. In 2008, the Arizona Department of Administration and Personnel Board enacted rules giving certain benefits for "domestic partners" of state employees, regardless of sexual orientation. See Ariz. Admin. Code R2-5-101(22) (2008). Because Kutcher was Loncar's domestic partner, she identified him as her dependent for state employee benefits, including coverage for life insurance.
¶ 4 In 2010, the Arizona Legislature enacted Arizona Revised Statutes ("A.R.S.") section 38-651(O), defining "dependent," as relevant here, to mean "a spouse under the laws of this state," thereby invalidating Kutcher's previous designation as Loncar's dependent for purposes of receiving state employee benefits. Because same-sex couples were prohibited from marrying in Arizona at that time, their dependent designations for state employee benefits were also negated under A.R.S. § 38-651(O), and they sued for declaratory and injunctive relief. See Collins v. Brewer , 727 F.Supp.2d 797, 815 (D. Ariz. 2010). On July 23, 2010, before the statute's effective date, the United States District Court enjoined the State "from enforcing A.R.S. § 38-651(O) to eliminate family insurance eligibility for lesbian and gay State employees, and their domestic partners" and specifically ordered the State "to make available family health insurance coverage for lesbian and gay State employees ... to the same extent such benefits are made available to married State employees[.]" Collins , 727 F.Supp.2d at 815. The Ninth Circuit Court of Appeals affirmed, see Diaz v. Brewer , 656 F.3d 1008 (9th Cir. 2011), and the United States Supreme Court denied the State's petition for writ of certiorari, see Brewer v. Diaz , 570 U.S. 931, 133 S.Ct. 2884, 186 L.Ed.2d 932 (2013). Thus, as of July 2010, same-sex domestic partners were eligible to be dependents for the purposes of state employee *1062 benefits, but unmarried opposite-sex domestic partners were not.
¶ 5 On June 7, 2014, Kutcher died in a car accident. Because Kutcher was not Loncar's dependent under A.R.S. § 38-651(O), he had no state life insurance coverage, and Loncar received no insurance benefits following his death. The District Court then dissolved the preliminary injunction effective December 31, 2014, because, as of that date, same-sex couples could legally marry in Arizona and, if they chose to marry, would qualify for state employee benefits under A.R.S. § 38-651(O).
¶ 6 On April 21, 2016, Loncar filed a complaint alleging sex discrimination and seeking "a declaration that the distinction in State benefits between employees in same sex domestic partnerships and different sex domestic partnerships" violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Privileges & Immunities and Preferential Treatment of Employees Clauses of the Arizona Constitution. Loncar also sought the life insurance proceeds to which she would have been entitled if she could have designated Kutcher as her dependent.
¶ 7 The State moved to dismiss, arguing Loncar failed to state a claim upon which relief could be granted because, among other things, A.R.S. § 38-651(O) did not confer any privilege on unmarried same-sex couples that it withheld from unmarried heterosexual couples. Loncar countered that the State withheld benefits to unmarried heterosexual couples based solely on her sex as female, a protected class. After full briefing and oral argument, in March 2017, the superior court dismissed Loncar's claims. The court found that (1) "based upon the plain meaning of the term, 'sex' refers only to membership in a class delineated by gender, and not to sexual orientation;" (2) "[a]s [Loncar] conceded at oral argument, sexual orientation is not expressly included in the constitutionally protected class;" (3) Loncar "therefore does not fall within the protected class and may not bring a claim under the Preferential Treatment of Employees Clause for preferential treatment or discrimination based on sexual orientation;" (4) the State did not violate the Equal Protection Clause or the Privileges & Immunities Clause because it "had a reasonable basis in these circumstances for providing life-insurance coverage to unmarried same-sex couples" in complying with the District Court orders; and (5) as determined by the District Court, "same-sex domestic partners were not similarly situated with opposite sex domestic partners for purposes of application of A.R.S. § 38-651(O)... [since] insurance benefits were available to heterosexual couples because there was no legal impediment to such couples, including [Loncar and Kutcher], getting married." Loncar unsuccessfully moved to set aside the final judgment.
¶ 8 Loncar timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).
DISCUSSION
¶ 9 We review de novo the superior court's grant of a motion to dismiss a complaint for failure to state a claim. Pivotal Colo. II, L.L.C. v. Ariz. Pub. Safety Pers. Ret. Sys. , 234 Ariz. 369, 370, ¶ 4, 322 P.3d 186, 187 (App. 2014). In reviewing the complaint's dismissal, we "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom," Cullen v. Auto-Owners Ins. Co. , 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008), and will affirm "only if the plaintiff would not be entitled to relief under any set of facts pleaded in the complaint that are susceptible of proof," Albers v. Edelson Tech. Partners L.P. , 201 Ariz. 47, 50, ¶ 7, 31 P.3d 821, 824 (App. 2001).
I. The State Did Not Violate the Equal Protection Clause of the United States Constitution or the Privileges & Immunities Clause of the Arizona Constitution.
¶ 10 Loncar argues the State's grant of benefits to same-sex partners, but not opposite-sex partners, violated the state and federal guarantees of equal protection. Specifically, she asserts that the State treated "similarly situated" persons differently by favoring one group and discriminating against another, and the State's reason for *1063 distinguishing between those groups was only to save money by offering benefits to fewer people.
¶ 11 The Fourteenth Amendment to the United States Constitution states in pertinent part, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unites States ... nor deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1. Likewise, the Arizona Constitution provides that "[n]o law shall be enacted granting to any citizen, class of citizens ... privileges or immunities which, upon the same terms, shall not equally belong to all citizens[.]" Ariz. Const. art. 2, § 13. "The effects of the federal and state equal protection guarantees are essentially the same ... each generally requiring the law treat all similarly situated persons alike[.]" State v. Panos , 239 Ariz. 116, 118, ¶ 7, 366 P.3d 1006, 1008 (App. 2016) (citations and quotation omitted). Equal protection, however, "does not require that all persons be treated alike, only that individuals within a certain class be treated equally and that there exist reasonable grounds for the classification." State v. Navarro , 201 Ariz. 292, 298, ¶ 25, 34 P.3d 971, 977 (App. 2001) (citation omitted). If a suspect class or fundamental right is implicated, we apply a strict scrutiny review. Church v. Rawson Drug & Sundry Co. , 173 Ariz. 342, 349, 842 P.2d 1355, 1362 (App. 1992). But when neither a suspect class nor fundamental right is involved, we will uphold government action if it is "rationally related to a legitimate government purpose." Navarro , 201 Ariz. at 298, ¶ 25, 34 P.3d at 977 (citation omitted).
¶ 12 The rational basis test does not require the State to choose "the least intrusive, nor most effective, means of achieving its goals." State v. Hammonds , 192 Ariz. 528, 532, ¶ 15, 968 P.2d 601, 605 (App. 1998). "[A]bsolute equality and complete conformity of legislative classifications are not constitutionally required." City of Tucson v. Grezaffi , 200 Ariz. 130, 137, ¶ 18, 23 P.3d 675, 682 (App. 2001) (citation and quotation omitted). Thus, "[e]ven if the classification results in some inequality, it is not unconstitutional if it rests on some reasonable basis." Church , 173 Ariz. at 351, 842 P.2d at 1364. It must not, however, be arbitrary or irrational. Coleman v. City of Mesa , 230 Ariz. 352, 363, ¶ 43, 284 P.3d 863, 874 (2012). Instead, government action will violate equal protection "only if it is 'wholly irrelevant' to the achievement of a legitimate governmental objective." Hammonds , 192 Ariz. at 532, ¶ 15, 968 P.2d at 605 (citation omitted); see also Church , 173 Ariz. at 350, 842 P.2d at 1363 (noting courts may consider "either the actual basis on which the legislature acted or any hypothetical basis on which it might have acted.") (citation omitted).
¶ 13 Employing these principles, we conclude the State's action in offering benefits to same-sex couples, but not heterosexual couples was constitutional. First, as a heterosexual couple, Loncar and Kutcher were not "similarly situated" persons with same-sex couples. Loncar and Kutcher had the fundamental legal right to marry and could have obtained employee benefits, including insurance on Kutcher's life, as "a spouse under the laws of this state." Nothing in the State's decision to offer benefits to same-sex couples impeded or prevented Loncar from doing so at any time. In contrast, short of litigation, same-sex couples had no option to legally marry to obtain employee benefits.
¶ 14 Next, the State's extension of benefits to same-sex couples was reasonable and rationally related to a legitimate government purpose. The District Court specifically ordered the State "to make available family health insurance coverage for lesbian and gay State employees ... to the same extent such benefits are made available to married State employees[.]" Collins , 727 F.Supp.2d at 815. The State complied with the District Court's explicit directive by offering benefits to same-sex couples-a reasonable basis for distinguishing between same-sex domestic partners and heterosexual domestic partners and rationally related to a legitimate government purpose.
¶ 15 Loncar argues that the State's action did not serve a legitimate government purpose because "[s]aving money was the only excuse the State has ever proffered for not providing the same life insurance to unmarried *1064 different-sex domestic partners that it provided to unmarried same-sex domestic partners." She cites to Diaz , 656 F.3d at 1014, for the proposition that when "savings depend upon distinguishing between homosexual and heterosexual employees, similarly situated ... such a distinction cannot survive rational basis review." (Emphasis added). Again, Loncar and Kutcher were not similarly situated to same-sex couples because they could legally marry. We find that the State's strict compliance with the District Court's direct order was a legitimate government purpose for offering same-sex couples employee benefits. See Church , 173 Ariz. at 350, 842 P.2d at 1363.
¶ 16 Nevertheless, Loncar urges us to examine the State's action applying strict scrutiny review, rather than rational basis review, because she argues it implicates a classification based on a person's sex. As discussed, infra ¶ 20, the State's action was not based on Loncar's biological designation as female, but on her marriage eligibility as a heterosexual couple. It is undisputed that sexual orientation is not a suspect class and employee benefits do not involve a fundamental right. Therefore, we evaluate the State's action applying rational basis review.
¶ 17 Loncar next argues that "[f]orcing a person into marriage just to get insurance benefits available to other persons who are not married ... is an assault on personal choice and individual freedom." To support her assertion that she has the "right not to marry," Loncar cites to Obergefell v. Hodges , --- U.S. ----, 135 S.Ct. 2584, 2589, 192 L.Ed.2d 609 (2015), for the proposition that the "right to personal choice regarding marriage is inherent in the concept of personal autonomy." In Obergefell , the United States Supreme Court stressed at length the "centrality of marriage to the human condition" and that "[f]rom their beginning to their most recent page, the annals of human history reveal the transcendent importance of marriage." Id . at 2593-94. The Obergefell petitioners, more than a dozen same-sex couples, however were denied the legal right to marry and participate in that most-important institution; they were suing for the right to share in the "privileges and responsibilities" attendant with marriage. Id . at 2594. Loncar has always possessed that right - the personal choice and individual freedom to marry (or not marry). But along with that personal right and choice flows the consequences of marital status, none of which are unconstitutional as a matter of law. As the Obergefell Court articulated,
[W]hile the States are in general free to vary the benefits they confer on all married couples, they have throughout our history made marriage the basis for an expanding list of governmental rights, benefits, and responsibilities. These aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decisionmaking authority; adoption rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; and child custody, support, and visitation rules. Valid marriage under state law is also a significant status for over a thousand provisions of federal law. The States have contributed to the fundamental character of the marriage right by placing that institution at the center of so many facets of the legal and social order.
135 S.Ct. at 2601 (citations omitted).
¶ 18 In sum, the State did not violate Loncar's federal or state equal protection rights. She would not be entitled to relief under any set of facts and dismissal of her complaint was proper.
II. The State Did Not Violate the Preferential Treatment of Employees Clause of the Arizona Constitution.
¶ 19 Finally, Loncar argues that the State denied her employee benefits provided to same-sex domestic partners simply because biologically she is female and Kutcher was male; whereas partners who were both male or both female were eligible for benefits. Thus, Loncar contends the State committed sex discrimination.
¶ 20 Under the Arizona Constitution, the State "shall not grant preferential treatment *1065 to or discriminate against any individual or group on the basis of ... sex ... in the operation of public employment[.]" Ariz. Const. art. 2, § 36 (A). In her brief, Loncar spends a great deal of time explaining and defining "sex" to mean the classification of organisms into the two divisions of female and male. This, she argues, is the root of the issue (and the State's discrimination) and the superior court erred in "focus[ing] on irrelevant terms and concepts such as 'gender,' 'sexual orientation,' 'sexual preference,' and 'sexual affiliation.' " But Loncar's argument misses the mark. Here, as mandated by the District Court injunction, the State's action in offering employee benefits to same-sex couples and not to unmarried heterosexual couples was not based on the biological sex of either person in the couple; it was based solely on the distinction of marriage eligibility. At that time, same-sex couples were not eligible to marry, yet opposite-sex couples were. In other words, the couple's sexual orientation determined their eligibility to marry and obtain benefits; the State's action was based on that distinction alone. As Loncar concedes, sexual orientation is not a constitutionally protected class. Thus, the State did not violate the Preferential Treatment of Employees Clause of the Arizona Constitution and Loncar's claim fails as a matter of law.
CONCLUSION
¶ 21 For the foregoing reasons, we affirm the superior court's dismissal of Loncar's claims.[1] Without citation to authority, Loncar requests attorneys' fees and costs on appeal. We deny her request.

Loncar also argues that (1) Arizona's Declaratory Judgment Act supports her claims because her rights were affected by a statute; (2) the one-year statute of limitations does not bar her claims because she is seeking declaratory and injunctive relief only, not monetary damages under a typical tort action; and (3) the State is not immune from liability under either a legislative or administrative function because she is not seeking damages and the State's action involved no exercise of discretion. Because we find the constitutional issues dispositive and affirm the superior court's dismissal on those grounds, we need not address Loncar's additional arguments. See Forszt v. Rodriguez , 212 Ariz. 263, 265, ¶ 9, 130 P.3d 538, 540 (App. 2006) ("We may affirm the trial court's ruling if it is correct for any reason apparent in the record.").
Moreover, because the nature of Loncar's claims are ill-defined, we are unable to determine the applicable statute of limitations and rule on that issue. Although Loncar's complaint sought declaratory and injunctive relief, it also sought the life insurance proceeds for a non-existent policy despite her contention that this is not an action for monetary damages. It is unclear if her claims are based on, for example, a breach of contract (i.e. , pursuant to her employment contract, she was eligible to purchase a life insurance policy and pay the premiums, thereby holding a policy in effect at the time of Kutcher's death) or tort (i.e. , money damages in the amount of the life insurance policy payout rendered void when Kutcher was no longer considered Loncar's dependent). Each cause of action, whether state or federal, involves different statute-of-limitations periods. Because we reach the merits and affirm the superior court's ruling on the constitutional issues, remanding to develop the record regarding the applicable statute of limitations would be futile.