**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH R. DIAZ; JUDITH MCDANIEL;
KEITH B. HUMPHREY; BEVERLY
SECKINGER; STEPHEN RUSSELL;
DEANNA PFLEGER; CARRIE SPERLING;
LESLIE KEMP; COREY SEEMILLER,
        *Plaintiffs-Appellees,*

v.

JANICE K. BREWER, in her official
capacity as Governor of the State
of Arizona; DAVID RABER, in his
official capacity as Interim
Director of the Arizona
Department of Administration and
Personnel Board; KATHY
PECKARDT, in her official capacity
as Director of Human Resources
for the Arizona Department of
Administration and Personnel
Board,
        *Defendants-Appellants.*

No. 10-16797

D.C. No.
2:09-cv-02402-JWS
District of Arizona,
Phoenix

ORDER

Filed April 3, 2012

Before: Mary M. Schroeder and Sidney R. Thomas,
Circuit Judges, and Mark W. Bennett,* District Judge.

Order;
Dissent by Judge O'Scannlain

*The Honorable Mark W. Bennett, United States District Judge for the
District of Northern Iowa, sitting by designation.

3585

## ORDER

The panel has voted to deny defendants-appellants' petition for panel rehearing. Judge Thomas has voted to deny the petition for rehearing en banc, and Judges Schroeder and Bennett have so recommended.

The full court was advised of defendants-appellants' petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

Defendants-appellants' petition for panel rehearing and petition for rehearing en banc are denied.

---

O'SCANNLAIN, Circuit Judge, joined by BEA, Circuit Judge, dissenting from the order denying rehearing en banc:

In this case a three-judge panel of our court holds that a state law limiting state-employee dependent-partner health benefits to spouses—and thus denying such benefits to dependent domestic partners—could not survive rational basis review. Although most of those affected adversely by the law would be opposite-sex couples, the panel concluded that the law irrationally discriminated against gays and lesbians.

The panel's holding rests on a disparate impact theory that the Supreme Court has squarely rejected and on a misapprehension of rationality review. The panel also all but expressly held that opposite-sex-only marriage rules are unconstitutional—indeed, that such rules are irrational per se because they can rest only on a "bare desire to harm a politically unpopular group." 656 F.3d 1008, 1015 (internal quotation marks and ellipses omitted).

Such a dramatic expansion of circuit law—particularly one beset by critical legal errors—should not have been taken without considered reflection by a larger cohort of our court. I respectfully dissent from the regrettable failure of our court to rehear this case en banc.

I

Until 2008, the State of Arizona limited state-employee dependent-partner health benefits to dependent spouses. In April of that year, Arizona's administrative code was amended to extend such benefits to qualified domestic partners, whether of the same or opposite sex as the state employee. 656 F.3d at 1010; *see* Ariz. Admin. Code R2-5-101(22) (Apr. 25, 2008) (for purposes of granting benefits to state employees, a "domestic partner" is one who, among other requirements, had shared a residence with the state employee for at least 12 consecutive months before applying for benefits, was financially interdependent with the employee, and was not married or in another domestic-partner relationship).

Soon after this amendment was made, the State began to deal with a severe budget crisis. The State had a projected $400 million deficit in June 2008 and a reported $1.6 billion deficit by early 2009. As part of a budget reconciliation bill addressing that crisis, in 2009 the state legislature enacted Section O, which limits state-employee dependent-partner health benefits to employees' spouses. 656 F.3d at 1010; *see* Ariz. Rev. Stat. § 38-651(O). Section O would have halted such benefits for dependent domestic partners, whether of the opposite or the same sex as the state employee.

The plaintiffs are several gay and lesbian state employees with committed domestic partners. They filed suit in November 2009 seeking a declaration that Section O violates the equal protection and due process clauses of the Fourteenth Amendment and an order permanently enjoining Section O

from being enforced. In July 2010 the district court preliminarily enjoined Section O as a likely violation of the equal protection clause. 727 F. Supp. 2d 797 (D. Ariz. 2010).

The panel affirmed the preliminary injunction. Although Section O on its face applies to employees in both opposite-sex and same-sex domestic partner relationships, it concluded that the provision drew an irrational classification because opposite-sex partners could escape Section O's effect by marrying, whereas same-sex couples in Arizona may not do so because the state constitution limits marriage to unions between one man and one woman. *See* 656 F.3d at 1014. The panel rejected the State's argument that Section O is justified by the State's pressing need to cut costs in the face of a historic budget crisis. It reasoned that "the savings depend upon distinguishing between homosexual and heterosexual employees, similarly situated, and such a distinction cannot survive rational basis review." *Id.* The panel rejected all other justifications for Section O, condemning it as an "arbitrary" law that "adversely affects [a] particular group[ ] that may be unpopular." *Id.* at 1013.

## II

With respect, I suggest that the panel's equal protection analysis suffers from two significant errors.

## A

The panel disregarded the requirement that a plaintiff alleging an equal protection violation must show that state action "had a discriminatory effect *and* that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (emphasis added).

For nearly fifty years the Supreme Court has made clear that its cases "have not embraced the proposition that a law or other official act, without regard to whether it reflects a . . .

discriminatory purpose, is unconstitutional *solely* because it has a . . . disproportionate impact." *Washington v. Davis*, 426 U.S. 229, 239 (1976); *see, e.g.*, *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) ("We have made clear that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.") (brackets and internal quotation marks omitted); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (same).

The panel side-stepped this fundamental proposition. It cited no evidence that Section O was adopted with an intent to discriminate. The panel instead embraced the district court's rationale that the law violated equal protection because of its supposed disparate impact. But as the cases just cited make clear, such a showing could not alone invalidate Section O on equal protection grounds even under the highest level of judicial scrutiny.

Rather than apply that settled law, the panel concluded that *United States Department of Agriculture v. Moreno*, 413 U.S. 528 (1973), required a different result because (in the panel's view) Section O "adversely affects [a] particular[ ] group that may be unpopular." 656 F.3d at 1013. *Moreno* struck down as irrational an amendment to the Food Stamp Act that rendered ineligible for assistance any household containing a person unrelated to any other member of the household. Taking stock of legislative history "indicat[ing] that th[e] amendment was *intended* to prevent so-called 'hippies' and 'hippie communes' from participating in the food stamp program," the Court concluded that the amendment was motivated by "a bare congressional desire to harm a politically unpopular group," which "cannot constitute a legitimate governmental interest." 413 U.S. at 534 (emphasis added; other emphasis omitted). *Moreno* did not rest only on the law's adverse effect; rather, it applied the equal protection principles set forth above to strike down a law motivated by a discriminatory purpose.

There is no such evidence that Section O was motivated by animus. Section O's context and history bears out that it rests entirely on budgetary considerations. Until 2008, Arizona limited state-employee dependent-partner health benefit coverage to spouses. In 2008 it briefly relaxed that limitation. The very next year, in the face of its budget crisis, Arizona decided to return to its previous policy. That decision does not show animus, actual or implied. Nor does Section O's supposed disparate impact on gays and lesbians. Indeed, Section O most likely would burden many more opposite-sex than same-sex couples because many more opposite-sex partners would stand to lose their benefits. *See* 727 F. Supp. 2d at 800. To conclude that the law will disproportionately affect same-sex couples would require one to assume that the vast majority of affected opposite-sex domestic partners would marry just to preserve their benefits. Though the panel seemed to credit that assumption, *see* 656 F.3d at 1014, the Arizona legislature was entitled (particularly under rationality review, *see infra* Part II-B) to presume that Section O would not spur a mass rush into matrimony.

The plaintiffs here have simply not shown—as was their burden, *see Wayte*, 470 U.S. at 608—that Section O was motivated by a discriminatory intent. They have not even shown a likely disparate effect that would harm them. The panel therefore erred in finding a likely equal protection violation.

B

The panel also erred in holding that Section O cannot withstand rational basis review. Even in cases applying a robust form of rationality review, the Supreme Court has made clear that a legislative classification must be upheld "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Those challenging a classification on rational basis grounds "have the burden to negat[e] every conceivable basis which might support it." *FCC v.*

*Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (internal quotation marks omitted).

Here, the cost-savings rationale offered by the State was sufficient to justify Section O. In 2008 and 2009, Arizona faced a severe budget crisis. The State therefore enacted a budget reconciliation bill that, among other cost-reduction measures, tightened state-employee dependent-partner benefits. Section O would have generated significant cost savings. In the 2008-2009 plan year, domestic partner healthcare claims cost the State more than $4.07 million; when the district court granted the preliminary injunction, those claims had already cost the State more than $5.49 million in the 2009-2010 plan year. 727 F. Supp. 2d at 812.

The panel nonetheless held that Section O is not rationally related to cost saving because, in the panel's view, "the savings depend upon distinguishing between homosexual and heterosexual employees, similarly situated, and such a distinction cannot survive rational basis review." 656 F.3d at 1014. But that is clearly wrong as a matter of fact: The cost savings depend on no such distinction. To the contrary, the savings will come mostly from discontinuing benefits to *opposite*-sex domestic partners because only "[a] small fraction" of those receiving domestic partner benefits are in a same-sex partnership. 727 F. Supp. 2d at 800.

Had the panel faithfully represented how Section O operates, it could not have condemned it as irrational. As already explained, the legislature was entitled to believe that most employees in opposite-sex domestic partner relationships would not sprint to marry, and thus it was entitled to believe that the lion's share of the savings would come from ending coverage for opposite-sex couples. The panel was obliged to credit that determination and to uphold the law.

III

Beyond the damage done to established Fourteenth Amendment law, the panel decision threatens to dismantle constitu-

tional, statutory, and administrative provisions in those states that wish to promote traditional marriage. The panel concluded—in a way that is veiled but unmistakable—that rules benefitting only traditional marriage serve no conceivable rational purpose. That conclusion broadsides Arizona voters, smothers their efforts (and the efforts of other voters in this circuit) to protect traditional marriage, and clashes with decisions of other courts.

Both states and the federal government have long sought to embody, in the law, our Nation's deep-rooted respect for traditional marriage. *See, e.g.*, 28 U.S.C. § 1738C; *Reynolds v. United States*, 98 U.S. 145, 164-66, 168 (OT 1878); *Adams v. Howerton*, 673 F.2d 1036, 1039-40, 1042-43 (9th Cir. 1982); *Baker v. Nelson*, 191 N.W.2d 185, 185-87 (Minn. 1971). In the past decade alone, many states have amended their constitutions to affirm that respect and to fortify the protections of traditional marriage[1] notwithstanding that some states have voted to extend the status of marriage to same-sex couples.[2]

Arizona voters made clear their desire to protect this fundamental institution when, in November 2008, they amended their constitution to define marriage as between one man and one woman. *See* Ariz. Const. art. XXX, § 1. Section O accords with their choice to recognize legally only traditional marriage.

By concluding that Section O lacks any rational basis, the panel condemned the considered views of Arizona's voters and all others who wish to promote traditional marriage

---

[1]*See, e.g.*, Fla. Const. art. I, § 27 (2008); Ga. Const. art. I, § 4, ¶ I (2004); Idaho Const. art. III, § 28 (2006); Kan. Const. art. XV, § 16 (2005); Ky. Const. § 233A (2004); Mich. Const. art. I, § 25 (2004); Mo. Const. art. I, § 33 (2004); Nev. Const. art. I, § 21 (2002); N.D. Const. art. XI, § 28 (2004); Okla. Const. art. II, § 35 (2004); Or. Const. art. XV, § 5a (2004); Tex. Const. art. I, § 32 (2005); Wis. Const. art. XIII, § 13 (2006).

[2]*See, e.g.*, 2012 Md. Laws Ch. 2 (H.B. 438); Vt. Stat. Ann. tit. 15, § 8 (2009).

through the law. Without any supporting evidence, the panel berated that choice as animated by "a bare desire to harm a politically unpopular group." 656 F.3d at 1015 (internal quotation marks and ellipses omitted). That combustive conclusion will spur challenges to other state constitutional and statutory provisions that protect—indeed, even recognize—traditional marriage. No such laws are now safe in the Ninth Circuit: they are all, by the panel's judicial declaration, begotten from bigotry.

The panel's bottom-line conclusion—that rules benefitting only traditional marriage serve no conceivable rational purpose—also clashes with Supreme Court precedent, with our own case law, and with decisions of other federal and state appellate courts holding that laws recognizing or promoting traditional marriage do not violate the federal Constitution. *See, e.g.*, *Baker v. Nelson*, 409 U.S. 810 (1972) (dismissing for want of a substantial federal question the appeal from *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971)); *Adams*, 673 F.2d at 1042-43; *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 871 (8th Cir. 2006); *Jones v. Hallahan*, 501 S.W.2d 588, 590 (Ky. 1973); *Baker*, 191 N.W.2d at 185-87. Rather than showing similar respect for voters' choices, the panel in this case stripped our circuit's citizens of the right to embody their long-accepted, long-heralded, and long-cherished beliefs about marriage in their laws.

This case is in some ways even more breathtaking than our recent decision in *Perry v. Brown*, Nos. 10-16696, 11-16577, ___ F.3d ___, 2012 WL 372713 (9th Cir. Feb. 7, 2012). *Perry* struck down an amendment to California's constitution that restricted marriage to unions between a man and a woman. But the *Perry* majority said that it was "address[ing] no . . . question" regarding "the constitutionality of any ban on same-sex marriage," and was instead examining "whether the people of a state may by plebiscite strip a group of a right or benefit, constitutional or otherwise, that they had previously enjoyed on terms of equality with all others in the state." *Id.*

at *17 n.14. By holding here that opposite-sex-only marriage rules serve no rational purpose, the panel decided an issue that bears directly—perhaps dispositively—on the broad question expressly left open in *Perry*.

IV

The panel opinion conflicts with long-settled principles of equal protection law. It hobbles the efforts of States and their citizens to protect traditional marriage by condemning, as a matter of federal constitutional law, such efforts as motivated by unbridled, irrational hatred. It undermines the decision of Arizona's legislature to respond rationally to a historic budget crisis. Although the panel's decision was reached in the context of an interlocutory appeal of a preliminary injunction, its corrosive logic reaches further, all but proclaiming that limiting benefits only to married couples is unconstitutional.

If our court were going to break so dramatically from long-standing practice and tradition—and divide ourselves from the weight of authority on a matter that is so important—we should have done so only after reconsidering this matter en banc.

I respectfully dissent.